STATE of Missouri, Respondent,

v.

**Richard STRONG, Appellant.**

No. SC 85419.

Supreme Court of Missouri, En Banc.

Aug. 24, 2004.

Rehearing Denied Sept. 28, 2004.

---

Janet M. Thompson, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

A jury convicted Richard Strong of two counts of first degree murder for killing Eva Washington and Zandrea Thomas. The trial court adopted the jury's penalty phase verdict and sentenced Strong to death. As a result, this Court has exclusive jurisdiction of his appeal. Mo. Const. art. V, sec. 3. The judgment is affirmed.

## I. Facts

St. Ann police received a 911 call on October 23, 2000, at 3:30 p.m. The call was immediately disconnected. The dispatcher replayed the call and heard a scream. The dispatcher tried to redial the number repeatedly until officers arrived at the source of the call approximately two minutes later. The call originated from the apartment where Eva lived with her two daughters. The older daughter, Zandrea Thomas, was two years old. Strong is the father of the other girl, who was three months old.

When officers arrived at the apartment and knocked, initially there was no answer at the front or back door. They continued to knock and shouted, and Strong eventually came to the back door. Upon inquiries by the police, Strong initially told them Eva and the kids were sleeping. Strong meanwhile stepped outside and closed the door behind him.

The police again asked about Eva, and Strong told them she had gone to work. Because this was an inconsistent response, the police asked about the children, and Strong told them the kids were inside. The officers asked if they could check on the children, and Strong told them he had locked himself out.[1] Strong knocked on the door and called for someone to open it.

Officers noted that Strong was sweating profusely, had dark stains on the knees of his jeans, and had blood on his left hand. They ordered Strong to step aside and kicked in the door. Strong ran. When the officers chased him, Strong told them, "Just shoot me; just shoot me." After he was handcuffed, he told the officers, "I killed them."[2]

---

1. After his arrest, officers inventoried the contents of Strong's pockets and found a set of keys. When they returned to the scene, they discovered that one of those keys unlocked the front and back doors to Eva's apartment.

2. Although it was not introduced into evidence at his trial, the following exchange was included in the record on appeal. This conversation between the trial court and Strong occurred at a pretrial hearing during which Strong testified under oath:

> The Court: And the Court here today is indicating to you vehemently, as strongly as I can talk to you and tell you, that you

Inside the apartment, police found the dead bodies of Eva and Zandrea in a back bedroom. They had been stabbed repeatedly with a knife. On the bed, one of the officers found a large butcher knife and a three-month-old baby sitting next to a pool of blood. An autopsy revealed that Eva had been stabbed 21 times, with five slash wounds, and the tip of the knife used to stab her was embedded in her skull. The autopsy of two-year-old Zandrea showed she had been stabbed nine times and had 12 slash wounds.

Strong was charged with both murders. After a trial in St. Louis County, a jury returned a guilty verdict. At the penalty phase trial, the jury found the existence of two statutory aggravators for each murder[3] and recommended a death sentence for Strong. The trial court sentenced Strong accordingly.

## II. Standards of Review

 This Court reviews the evidence presented at trial in the light most favorable to the verdict. *State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999). The trial court is vested with broad discretion in determining the admissibility of evidence offered at the guilt and penalty phases of a capital case. *State v. Storey,* 40 S.W.3d 898, 903 (Mo. banc 2001); *Middleton,* 995 S.W.2d at 452. Error will be found only if this discretion was clearly

abused. *State v. Johns,* 34 S.W.3d 93, 103 (Mo. banc 2000).

 On direct appeal, this Court reviews the trial court "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Storey,* 40 S.W.3d at 903. Issues that were not preserved may be reviewed for plain error only, which requires a finding that manifest injustice or miscarriage of justice has resulted from the trial court error. *Johns,* 34 S.W.3d at 103–04; *see* Rule 30.20.

## III. Issues on Appeal

On appeal, Strong alleges 12 points of error. For the sake of convenience, this opinion addresses his claims in the following order: A) the trial court erred in not *sua sponte* quashing the information in lieu of indictment for failure to charge any statutory aggravator (Strong's point 12); B) the trial court erred in denying the defense motion to disallow two of the state's peremptory challenges of venirepersons and in permitting the state to use only six of nine peremptory strikes (Strong's point 4); C) the trial court erred in sealing Eva's subpoenaed psychiatric records (Strong's point 5); D) the trial court erred in admitting photographs of the victims and the scene and a videotape of the scene during the guilt phase (Strong's point 7); E) the trial court erred

should not plead guilty but should go to trial. Do you understand that?
Strong: No.
The Court: What don't you understand in that statement, sir?
Strong: If you want to offer me the death penalty and I'm willing to accept it, why don't you understand?
. . . .
The Court: You do not want a trial to determine whether you're innocent or guilty of these crimes?
Strong: I know I'm guilty.

Following his guilt and penalty phase trials, Strong's counsel argued in a motion for new trial that the trial court erred in refusing to accept Strong's guilty plea and his request for the death penalty, but Strong did not raise this issue on appeal.

3. The jury found that the murders were committed while Strong was engaged in the commission of another unlawful homicide and that the murders were "outrageously or wantonly vile, horrible or inhuman," as defined by the applicable instruction. *See* sec. 565.032.2(2), (7), RSMo 2000.

in admitting police testimony that Strong was "nonchalant" after running from the apartment (Strong's point 8); F) the trial court erred in overruling the defense motion for judgment of acquittal, allowing the prosecutor's incorrect definition of "deliberation," and submitting instructions 5 and 6, which were based on MAI–CR3d 313.02 (Strong's point 2); G) the trial court erred during the penalty phase in admitting police testimony that Strong assaulted Eva in November 1999 (Strong's point 9); H) the trial court erred during the penalty phase in admitting evidence of unadjudicated bad acts (Strong's point 3); I) the trial court erred during the penalty phase in admitting photographs of the victims and their autopsies and in allowing the prosecutor to present a slide show during his penalty phase closing argument (Strong's point 1); J) the trial court erred in submitting instructions 16 and 17, which were based on MAI–CR3d 313.40 (Strong's point 6); and K) the trial court erred in allowing improper statements by the prosecutor during voir dire, the guilt phase, and the penalty phase (Strong's point 10). Section L includes an independent review of Strong's sentence and addresses his claims regarding the proportionality of his sentence and the state's proof of the statutory aggravator in section 565.032.2(7), RSMo 2000 (Strong's point 11).[4] Finally, section M addresses a motion filed by the state to strike portions of Strong's appellate brief and appendix.

## A. Information in Lieu of Indictment (Strong's point 12)

■ Strong claims the trial court plainly erred in not sua sponte quashing the information in lieu of indictment for failure to comply with *Ring v. Arizona*, 536 U.S. 584,

122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). He argues that the state failed, in the indictment or in the information in lieu of indictment, to charge any statutory aggravating circumstance [5] as was necessary to render him eligible for the death sentence if convicted.

Strong further contends that, because the information failed to plead any aggravating circumstances, the offense actually charged was unaggravated first degree murder, and the only authorized sentence is life imprisonment without probation or parole. Strong alleges these omissions by the state violated his constitutional rights to due process, a jury trial, and freedom from cruel and unusual punishment.

This Court has repeatedly held that statutory aggravating circumstances need not be pleaded in the information or indictment. *State v. Glass*, 136 S.W.3d 496, 513 (Mo. banc 2004); *State v. Edwards*, 116 S.W.3d 511, 543–44 (Mo. banc 2003); *State v. Gilbert*, 103 S.W.3d 743, 747 (Mo. banc 2003); *State v. Tisius*, 92 S.W.3d 751, 766–67 (Mo. banc 2002); *State v. Cole*, 71 S.W.3d 163, 171 (Mo. banc 2002). Pursuant to section 565.005.1, the state is required to give to the defendant, "[a]t a reasonable time before the commencement of the first stage of any trial of murder in the first degree," notice of the statutory aggravating circumstances it intends to submit in the event the defendant is convicted of first degree murder. Notice of statutory aggravating circumstances suffices in lieu of charging them in the infor-

---

**4.** All further statutory references are to RSMo 2000 unless otherwise indicated.

**5.** Section 565.032.2 enumerates the statutory aggravating circumstances for first degree murder.

mation or indictment. *Edwards,* 116 S.W.3d at 543.

The assertion that this Court's holding violates *Ring, Apprendi,* and *Jones* has also been denied previously. *Glass,* 136 S.W.3d at 513. Strong further attempts to rely on *United States v. Allen,* 357 F.3d 745 (8th Cir.2004). *Allen* offers no support, however, as it has been vacated and scheduled for rehearing en banc.

The state filed its indictment on November 30, 2000, its notice of aggravating circumstances on March 20, 2001, and its information in lieu of indictment on April 30, 2002. Strong's guilt phase trial began February 26, 2003, and his penalty phase trial began on March 5, 2003. As such, he received nearly two years' notice that the state intended to prove the statutory aggravators in section 565.032.2(2) and (7), that the "offense was committed while [Strong] was engaged in the commission or attempted commission of another unlawful homicide" and that the "murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind" as to both Eva and Zandrea. This point is denied.

### B. Batson Challenges
### (Strong's point 4)

Strong next raises two *Batson*[6] challenges. He argues that the trial court erred in denying his motion to disallow the state's peremptory challenges of African–American venirepersons Bobo and Stevenson and in allowing the state to use only six of its nine peremptory challenges.

#### 1.

■ "Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race." *State v. Marlowe,* 89 S.W.3d 464, 468 (Mo. banc 2002). There are three steps in a *Batson,* or race-based, challenge. *Id.* First, the defendant must raise a *Batson* challenge with respect to the specific venireperson struck by the state and identify the cognizable racial group to which that person belongs. *Id.* Second, the state must supply a reasonably specific and clear race-neutral explanation for the challenged strike. *Id.* Finally, if the state provides an acceptable reason for the strike, then the defendant must demonstrate that the state's proffered reasons were merely pretextual and that the strike was racially motivated. *Id.*

■ There are four factors to consider in determining pretext. *Id.* at 469–70. The first factor is the presence of "similarly situated white jurors who were not struck." *Id.* at 469. This factor is not conclusive but is "crucial" in determining pretext. *Id.* The second factor is the "degree of logical relevance between the proffered explanation and the case to be tried." *Id.* The third factor is the prosecutor's credibility based on his or her demeanor or statements during voir dire and the court's past experiences with that prosecutor. *Id.* The final factor is the demeanor of the excluded venireperson. *Id.* at 470. In determining pretext, the trial court should consider the "totality of the facts and circumstances surrounding the case," and the standard of review is for clear error. *Id.*

#### 2.

■ Strong alleges the prosecutor's peremptory strike of venireperson Bobo was pretextual. The prosecutor claimed he struck Bobo primarily because he is the assistant dean of Covenant Seminary, be-

---

6. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

cause he had a cousin who was convicted of murder and was incarcerated for that crime, and because Bobo was not as strong on the death penalty as the prosecutor would have preferred. Strong argued that the prosecutor overlooked a similarly employed white venireperson, Bobo's cousin in jail was a distant relative, and Bobo had responded previously that he could impose the death sentence.

In permitting the prosecutor's strike, the trial court stated the most important reason articulated was Bobo's job as an assistant dean at an institution "teaching individuals to go into religious training." Strong argued that venireperson McCabe was similarly situated to Bobo because McCabe had retired from teaching at a parochial school. As the trial court found, however, teaching students at a private high school differs from training individuals for a religious vocation.

Moreover, the fact that Bobo had a cousin in jail for murder differentiated him from McCabe. When asked whether he was "so far removed from [his cousin's conviction] that [he didn't] know whether or not the sentence [his cousin] received was considered fair or not fair," Bobo initially responded, "Well, of course his mother believes that he was set up." The trial court did not commit clear error in permitting the prosecutor's peremptory strike predicated in part on this ground.

■ Strong attempts in his brief to argue that the dismissal of a juror on the ground that a religious person would be less likely to impose the death penalty violates Article I, section 5 of the Missouri Constitution.[7] Strong failed to raise this claim before the trial court, and it is not preserved for appellate review. *See State v. Chambers*, 891 S.W.2d 93, 103–04 (Mo.

banc 1994). Neither has Strong demonstrated plain error. *See* Rule 30.20. The trial court did not clearly err in permitting the prosecutor's peremptory strike of venireperson Bobo.

### 3.

■ When Strong raised his *Batson* challenge as to venireperson Stevenson, the prosecutor responded that he struck her because she seemed "particularly unhappy" about sequestration, she was "particularly weak on the death sentence," she "doesn't have young children," and she "mentioned church and religion." The prosecutor also noted that Stevenson "had a brother in prison" but that "didn't seem to be too much of a problem at all for her." Because no discriminatory intent was inherent in the prosecutor's initial explanation, the challenge moved to the third step. *See Marlowe*, 89 S.W.3d at 468.

As to the prosecutor's claim that he struck venireperson Stevenson because she had no young children, Strong attempted to show pretext by arguing that three similarly situated white jurors were not struck. The prosecutor distinguished these jurors from Stevenson. He said one of them was a young teacher who works with children. Two of the other venirepersons had served previously on a jury, were "strong on the death penalty," and had "no hesitation" in imposing it. Other factors for these jurors, according to the prosecutor, outweighed the fact that they did not have minor children. The trial court stated that whether a juror had young children was "an extremely important factor" because the trial involved the alleged murder of a two-year-old child.

Strong next claims that the prosecutor's explanation for striking Stevenson because

---

7. Article I, section 5 provides in part "that no person shall, on account of his religious persuasion or belief, ... be disqualified from testifying or serving as a juror."

she was "particularly unhappy" about sequestration was pretextual because no record was made of her body language or facial expressions when they were observed. The trial court, however, noted that Stevenson displayed "physical disdain" regarding sequestration. Strong never argued, during voir dire or in his appellate brief, that these observations were faulty. The trial court's acceptance of this reason was not "clearly erroneous." *See State v. Gray,* 887 S.W.2d 369, 384 (Mo. banc 1994).

■■■ Strong next contends that striking Stevenson because she "mentioned church and religion" and stated that "one of the members of [her] church" is a manager for the Division of Family Services was pretextual. The prosecutor stated that Stevenson's religious beliefs possibly indicated "another reason she may very well be weak on the death penalty." Strong argues in his brief that the prosecutor "violated equal protection by predicating [his] excuse upon her religious affiliation." At trial, however, Strong never raised this argument and instead chose to oppose the prosecutor's statement that Stevenson was not strong on the death penalty. A constitutional argument must be raised before the trial court or it is waived. *See Chambers,* 891 S.W.2d at 103–04. Furthermore, Strong has not established that this was plain error. *See* Rule 30.20.

Strong next claims the prosecutor's decision to strike Stevenson because she was "particularly weak on the death sentence" was pretextual. The record reflects that Stevenson was asked whether she "would be able to consider both forms of punishment," namely life in prison and the death penalty. She responded: "I think it's circumstantial, too. You can't make a decision without hearing the facts, so my opinion, if the facts say so, then I wouldn't

have a problem with it. But if the facts don't say it, I cannot go that route." In a followup question, Stevenson said she would be able to consider both forms of punishment equally.

The record reveals that venirepersons Vance and Neal, whose responses were similar to Stevenson's, served on the jury. But venirepersons Pirrone and Teson, who were peremptorily stricken for reasons not revealed by the record, replied similarly to Stevenson and stated that their decision to impose the death penalty would depend on the circumstances. In other words, the record is ambiguous with respect to this justification by the prosecutor.

The prosecutor enunciated several reasons why he exercised a peremptory strike for Stevenson. Although some of the justifications are stronger than others, the totality of the circumstances establishes that the trial court did not clearly err by allowing the prosecutor's peremptory challenge of venireperson Stevenson. *See Marlowe,* 89 S.W.3d at 470.

### 4.

■■■ Strong next alleges that the trial court erred in allowing the state to use only six of its nine peremptory challenges. The trial court noted in the record that this effectively eliminated the last three potential jurors, who were all Caucasian. The trial court committed no error by striking the jurors at the bottom of the list in this manner. *See State v. Elder,* 901 S.W.2d 87, 91 (Mo.App.1995) (no error because, after prosecutor declined to exercise remaining peremptory strike, trial court removed surplus venireperson from list).

### C. Disclosure and Admission of Psychiatric Records (Strong's point 5)

■■■ Strong claims the trial court abused its discretion by sealing Eva's sub-

poenaed psychiatric records because these records may have disclosed an evidentiary basis for presenting a defense that Eva attacked Strong or Zandrea thereby causing Strong to attack her. He argues that sealing the records denied his rights to due process, to confrontation, and to present a defense.

Strong filed on January 8, 2002, a motion to compel disclosure of Eva's medical and psychiatric records containing a request for a pretrial hearing on the motion. The trial court filed an order on July 26, 2002, granting Strong's motion to compel disclosure of Eva's medical and psychiatric records. During the pretrial hearing on February 14, 2003, Strong requested an *in camera* review of the documents and indicated that he would decide after that review whether to depose an employee of one of the facilities from which the records were sought. At the pretrial hearing, the trial court ruled it would perform the *in camera* review as soon as the documents became available.

The court filed two orders on February 19, 2003. The first order noted the trial court had received the records, conducted the *in camera* inspection, and found that the documents were "irrelevant and immaterial to the case." The second order was to seal the records. Strong never objected to the sealing of these records, but he later argued in his motion for new trial that the trial court committed prejudicial error in overruling his motion to disclose Eva's medical and psychiatric records and in providing an *in camera* review of those records.

Strong has failed to preserve this claim of error as to the sealing of the records for appellate review, and the plain error standard of review applies. Rule 30.20. Following the *in camera* inspection, Strong

did not request to depose the witness, failed to object to the sealing of the record, and never raised the issue again until his motion for a new trial. Strong received all the relief that he requested, namely the grant of his motion to disclose, the pretrial hearing, and the *in camera* inspection. If he desired a different or additional remedy, he should have requested relief from the trial court. *State v. Walker,* 484 S.W.2d 284, 287 (Mo.1972). As he did not, he cannot claim error on appeal. *Id.* Furthermore, this Court's review of the sealed records confirms that the trial court did not abuse its discretion in sealing them. Strong has failed to demonstrate manifest injustice necessary to establish plain error. *See* Rule 30.20.

### D. Admission of Photographs and Videotape During Guilt Phase (Strong's point 7)

■ Strong contends the trial court erred during the guilt phase in admitting and repeatedly showing photographs and a videotape of Eva, Zandrea, and the scene.[8] He claims the prejudicial impact of these exhibits far outweighed their probative value and their admission encouraged the jury to disregard the facts and to convict Strong based on raw emotion.

■ The trial court has broad discretion in the admission of photographs. *State v. Ervin,* 979 S.W.2d 149, 161 (Mo. banc 1998). Its decision will not be overturned absent an abuse of discretion. *State v. Mayes,* 63 S.W.3d 615, 631 (Mo. banc 2001).

Photographs are relevant if they show the scene of the crime, the identity of the victim, the nature and extent of the wounds, the cause of death, the condition and location of the body, or other-

---

8. Strong specifically objects to the admission of photographs labeled as exhibits 4–17, 19– 34, 42–45, 47–48, 52–54, and to exhibit 35, the videotape.

wise constitute proof of an element of the crime or assist the jury in understanding the testimony. *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998). "It is generally accepted that if photographs are gruesome, it is simply because the crime itself was gruesome." *Ervin*, 979 S.W.2d at 161. "A photograph is not rendered inadmissible simply because other evidence described what is shown in the photograph." *Rousan*, 961 S.W.2d at 844.

Each of the photos was independently relevant and assisted the jurors in some respect to show the scene of the crime, the victims' identities, the nature and extent of the wounds, the condition and location of the bodies, or Strong's mental state at the time of the murders. The videotape contained the same content as the photographs but aided the jurors by providing a unified view of the environment in which the murders occurred. This point is denied.

### E. Admission of Opinion Testimony (Strong's point 8)

Strong contends the trial court abused its discretion in overruling his objection to police testimony that Strong was "nonchalant" after running from officers outside Eva's apartment following her murder. "Generally speaking, a nonexpert witness is not permitted to give his opinion or conclusion from facts observed, but there are exceptions to this rule." *State v. Wilkins*, 100 S.W.2d 889, 893–94 (Mo. 1936). Where the witness personally observed the events, he is permitted to testify as to his "comprehension of what he has seen in a descriptive manner" even if that testimony contains "a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life." *State v. Hill*, 812 S.W.2d 204, 208 (Mo.App.1991).

The trial court did not abuse its discretion in admitting this testimony. This point is denied.

### F. Deliberation as Defined by Statute and Prosecutor (Strong's point 2)

Strong's next point relied on contains multiple claims of error. He contends the trial court erred and plainly erred in overruling the motion for judgment of acquittal at the close of all the evidence; not *sua sponte* declaring a mistrial when the prosecutor stated that deliberation did not have to be reflected upon; accepting the jury's guilty verdicts for first degree murder; submitting instructions 5 and 6, the first degree murder instructions for Eva and Zandrea, respectively, that were based on MAI–CR3d 313.02; and not dismissing the first degree murder charges. He alleges that these errors denied him due process in that the first degree murder statute, section 565.020, requires deliberation, and section 565.002(3) defines "deliberation" as "cool reflection for any length of time no matter how brief."

#### 1.

Strong essentially argues that the statutory definition of "deliberation" is flawed and creates only an illusory distinction between first and second degree murder as applied. As Strong failed to raise this challenge at the instruction conference or in his motion for a new trial, he is only entitled to receive plain error review. *See* Rule 30.20. Similar challenges to this definition have previously been denied. *See State v. Middleton*, 998 S.W.2d 520, 524 (Mo. banc 1999); *State v. Rousan*, 961 S.W.2d 831, 851–52 (Mo. banc 1998). Instructions 5 and 6 contained the statutory definition of "deliberation" and did not result in manifest injustice.

### 2.

▆▆▆▆▆ Strong contends insufficient evidence existed to establish that he deliberated on the murders of Eva and Zandra. The requirement of proof of deliberation "sets first degree murder apart from all other forms of homicide." *State v. O'Brien*, 857 S.W.2d 212, 217–18 (Mo. banc 1993). Absent evidence of deliberation, an intentional killing is second degree murder. *State v. Cole*, 71 S.W.3d 163, 169 (Mo. banc 2002); *see* sec. 565.021.1 (crime of second degree murder). "Deliberation" is defined as "cool reflection for any length of time no matter how brief." Sec. 565.002(3). Proof of deliberation must ordinarily be provided through the circumstances surrounding the crime. *State v. Ferguson*, 20 S.W.3d 485, 497 (Mo. banc 2000). Deliberation may be inferred, but it must still be proved beyond a reasonable doubt. *State v. Malady*, 669 S.W.2d 52, 55 (Mo.App.1984).

▆▆▆▆▆ "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." *State v. Johnston*, 957 S.W.2d 734, 747 (Mo. banc 1997) (citations omitted). Deliberation may be inferred when there are multiple wounds or repeated blows. *Id.* at 748; *see, e.g., Ferguson*, 20 S.W.3d at 493, 497; *State v. Parkus*, 753 S.W.2d 881, 884–85 (Mo. banc 1988). In addition, failure to seek medical help for a victim strengthens the inference that the defendant deliberated. *State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc 1991).

▆▆▆▆▆ In evaluating the sufficiency of the evidence, the evidence is reviewed in the light most favorable to the state, and all reasonable inferences from the evidence are drawn in favor of the state. *State v. Butler*, 951 S.W.2d 600, 604 (Mo. banc 1997). Similarly, all inferences contrary to the verdict are rejected unless they are such a logical extension of the evidence that no reasonable juror could disregard them. *Id.*

The evidence and reasonable inferences therefrom demonstrate that sufficient evidence existed for the jurors to find that Strong deliberated. A photograph of the kitchen created the inference that Strong removed the butcher knife from that room and took it to the bedroom where he used it to kill Eva and Zandrea. The 911 call established that Eva attempted to call for help, yet her call was disconnected while she screamed.

Autopsies revealed that both victims suffered multiple stab wounds: Eva was stabbed 21 times and had five slash wounds, and Zandrea was stabbed nine times and had 12 slash wounds. In lieu of seeking medical help for either victim, Strong first ignored police, next lied to them by saying he had locked himself out, and then ran away. The evidence was sufficient as to each victim to submit the first degree murder charges to the jurors and to support their guilty verdicts.

### 3.

▆▆▆▆▆ Strong contends the prosecutor misstated the law during closing argument by arguing and thereby incorrectly redefining deliberation as follows: "The deliberation is not cool, it's not something that has to be reflected on, it is coolly reflected upon for any length of time, no matter how brief." The prosecutor followed with: "The entire instruction is important and that entire instruction is key," and Strong did not object. Section 565.002(3) defines "deliberation" as "cool reflection for any length of time no matter how brief." No manifest injustice resulted to Strong from this statement. This point is denied.

## G. Admission of Hearsay Testimony (Strong's point 9)

Strong alleges the trial court erred and abused its discretion in the penalty phase by admitting Eva's statements to the police that Strong assaulted her on November 10, 1999, in that the admission of this testimony violated the hearsay rule. During the trial, Strong objected to the admission of the order of protection that Eva received after that incident, but he never objected to the officer's testimony nor did he raise the issue in his motion for a new trial. As a result, this claim will be reviewed solely for plain error. *State v. Knese*, 985 S.W.2d 759, 769 (Mo. banc 1999); *State v. Rousan*, 961 S.W.2d 831, 842 (Mo. banc 1998).

The police officer testified that he responded to a domestic call at Eva's apartment on November 10, 1999, at approximately 11:30 p.m. He arrived within one minute of the 911 call and saw Strong and another man outside the apartment getting into separate cars. The officer testified that when he arrived, Eva "was crying, visibly upset, borderline hysterical." He said she had a knot on her forehead and her left eye was bruised. He testified that Eva said, " 'He hit me, he hit me in the eye, and he hit me in the mouth, and he choked me until I passed out.' " The officer testified that while Eva was saying those things, he noticed a large wet spot in the crotch of her pants. Eva told the officer that Strong was the one who had hit her.

The state contends the testimony was admissible because it was within the excited utterance exception of the hearsay rule. *See State v. Van Orman*, 642 S.W.2d 636, 638 (Mo.1982) (also referred to as "spontaneous exclamation" or "spontaneous statement" exception). At trial, Strong's counsel essentially conceded this assertion when he asked to approach the bench and said, "It was my understanding from in chambers that we were only going into a few of the statements which were made as excited utterances."

"The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy." *Id.* at 639. This exception is premised on the idea that "where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant." *Id.*

The officer testified that he arrived on the scene within one minute of the 911 call. Strong, who had committed the assault, was just outside the apartment on the parking lot at that time. The officer described Eva as "hysterical" upon his arrival. Her demeanor and the surrounding circumstances demonstrated her remarks were "made under the immediate and uncontrolled domination of the senses as a result of the shock produced" by her assault. *Id.* As such, her statements to the officer as to what had occurred were "made under such circumstances as to indicate [they were] trustworthy." *Id.*

Strong further argues that his case should be controlled by *State v. Bell*, 950 S.W.2d 482 (Mo. banc 1997). *Bell*, however, did not deal with the excited utterance exception and is inapplicable. *Id.* at 483–84. Strong has failed to demonstrate error, plain or otherwise, in the admission of this testimony.

## H. Admission of Evidence of Unadjudicated Bad Acts (Strong's point 3)

Strong alleges that the trial court erred and plainly erred during the penalty

phase in overruling his objections and not *sua sponte* excluding evidence of non-statutory aggravating circumstances, letting the jury consider that evidence in reaching its penalty phase verdict without proper instruction, and accepting the jury's guilt and penalty phase verdicts. Strong specifically argues it was error for the trial court to permit testimony of prior assaults he committed against Eva, his ex-wife, and a former coworker of Strong's.

### 1.

Strong's claim of error as to the four witnesses' testimony about his assaults is unpreserved. He filed a motion in limine to exclude the admission of the police reports and orders of protection entered against him after these assaults. He did not, however, object to the admission of these witnesses' testimony about these incidents. *See State v. Bucklew*, 973 S.W.2d 83, 94 (Mo. banc 1998) (defendant's allegation of error on appeal that differed from his argument at trial was not preserved). This claim of error will be reviewed only for plain error. Rule 30.20.

Strong's ex-wife testified that when she was four-and-a-half months pregnant with her second child by Strong, she met Strong to exchange custody of their son since they were separated. She testified that Strong "started striking" her at that time. The police were called. After the police left, she again attempted to leave with her son in her arms. This time, Strong began "pushing and hitting" and then struck her from behind "a couple of times in different places." She said he hit her on the ear and almost caused her to lose consciousness.

A former coworker of Strong's testified that when she worked with Strong, she and her boyfriend would occasionally socialize with him and his ex-wife. The coworker said that she and Strong were "close" and even went out alone a few times. She was driving a car with Strong in the passenger seat when she told him of her decision to terminate their social relationship. She testified that, while she was telling him they could no longer associate, "he got upset" and "grabbed the steering wheel and took [the car] into oncoming traffic."

While she attempted to regain control of the car, "he was yelling and cursing and proceeded to hit [her] in [her] face and wherever he could." She said the next thing she recalled was being awakened by the police. The car had hit the sidewalk, hopped the curb, and stopped. When she awoke, she "was bloody and in a lot of pain." Photographs of her face after this incident were admitted into evidence.

Two different witnesses testified as to prior assaults on Eva. The previous section of this opinion included the testimony of the police officer who responded to the 911 call on November 10, 1999, at 11:30 p.m., when Eva was assaulted. A friend of Eva's also testified as to that same incident. The friend said that Eva called her at 7 a.m. the next day and asked her to come over. The friend stated that Eva's "forehead was busted open, her left eye was closed shut, she had welts around her neck and handprints on her neck, and she had bruises on her arms."

The friend also testified that she had heard Strong on two occasions threaten to kill Eva. The second threat, according to the friend, occurred when Eva was pregnant with Strong's daughter. She testified she had overheard Strong say "he was going to get a chance to kill [Eva] and her baby."

Strong contends *State v. Debler*, 856 S.W.2d 641 (Mo. banc 1993), supports his claim that admitting unadjudicated bad acts constitutes error. This argument is

unpersuasive as the error in *Debler* was lack of notice. *State v. Glass*, 136 S.W.3d 496, 517 (Mo. banc 2004); *State v. Christeson*, 50 S.W.3d 251, 269–70 (Mo. banc 2001); *State v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998).

 "The trial court has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment." *Glass*, 136 S.W.3d at 517; *State v. Six*, 805 S.W.2d 159, 166 (Mo. banc 1991). The trial court did not err, plain or otherwise, in admitting the testimony about Strong's prior assaults on Eva, his ex-wife, or his former coworker.

### 2.

Strong contends on appeal that instructions 17 and 22, modeled after MAI–CR3d 313.41A, were improper because they "let the jury decide what burden of proof it would apply and on whom to place that burden." At trial, however, he objected to these instructions because they were "not supported by the evidence and vague and unconstitutional." Because these allegations of error differ, this argument is unpreserved and will be reviewed solely for plain error. *Bucklew*, 973 S.W.2d at 94; Rule 30.20.

This Court has repeatedly rejected the claim that the admission in the penalty phase of unadjudicated bad acts violates due process because the state is not required to prove those acts beyond a reasonable doubt. *See State v. Ferguson*, 20 S.W.3d 485, 500 (Mo. banc 2000); *State v. Kinder*, 942 S.W.2d 313, 331 (Mo. banc 1996). The trial court did not err, plain or otherwise, in submitting instructions 17 and 22 to the jury.

### I. Admission of Photographs and Slide Show During Penalty Phase (Strong's point 1)

Strong contends the trial court erred during the penalty phase in admitting several photographs of Eva and Zandrea at the scene and during the autopsies and in letting the state present photographs as part of a computerized slide show during its penalty phase closing argument.[9] Strong claims the prejudicial impact of these exhibits vastly outweighed their probative value as they were irrelevant and were admitted "solely to engender passion and prejudice" and because "their duplicative nature compounded the prejudice from each individual view."

### 1.

The criteria for the admission of photographs discussed in section D of this opinion also apply to this argument. All of the photographs challenged in this point were also previously discussed in section D. The trial court did not abuse its discretion in admitting them during the penalty phase.

### 2.

 The state contends it employed the slide show to establish the statutory aggravator in section 565.032.2(7), which required it to demonstrate that the murders were "outrageously or wantonly vile, horrible or inhuman" in that they involved "torture, or depravity of mind." The state was also required to prove that Strong "committed repeated and excessive acts of physical abuse" upon the victims and that the killings were "unreasonably brutal" as a result. *See* MAI–CR3d 313.40.

Strong contends the computerized slide show was more prejudicial than probative because it resulted in the jury's being

9. Strong specifically objects to the admission of photographs labeled as exhibits 10–17, 19– 34, 47–48. No exhibit number was assigned to the slide show.

"bombarded with a host of graphic, color images." As Strong notes in his brief, the slide show depicted photographs of "Eva and Zandrea before the events in question; Eva and Zandrea at the scene and during the autopsies; the butcher knife and [Strong's mug shot], superimposed on the other images." Nearly all of the photographs contained in the slide show were previously admitted, and those not admitted lacked prejudice as they merely contained innocuous photographs of the victims.

"Gruesome crimes produce gruesome, yet probative, photographs, and a defendant may not escape the brutality of his own actions." *State v. Wolfe,* 13 S.W.3d 248, 264 (Mo. banc 2000). Strong fails to establish that the slide presentation during the penalty phase prompted the jury to act other than on the basis of reason. The trial court did not abuse its discretion in permitting the state to display a slide show to the jurors during the penalty phase.

### J. Instructional Error During Penalty Phase (Strong's point 6)

Strong next claims that the trial court erred in submitting instructions 16 and 21, based on MAI–CR3d 313.40, because the term "abuse" in those instructions applies only to conscious suffering as otherwise the instruction is vague, overbroad, and allows the jury limitless discretion. Strong also contends that insufficient evidence exists to support the depravity of mind aggravator in section 565.032.2(7) [10] since no evidence shows that either victim was conscious after the first blow.

**1.**

The trial court read instruction 16 to the jury for the depravity of mind aggravator. It provided in pertinent part:

In determining the punishment to be assessed under Count I against the defendant for the murder of Eva Washington, you must first unanimously determine whether one or more of the following statutory aggravating circumstances exists:

. . . .

2. Whether the murder of Eva Washington involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find the defendant committed repeated and excessive acts of physical abuse upon Eva Washington and the killing was therefore unreasonably brutal.[11]

Strong argues that, under *Godfrey v. Georgia,* 446 U.S. 420, 428–29, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and *State v. Feltrop,* 803 S.W.2d 1, 14–15 (Mo. banc 1991), this instruction can only survive a challenge for vagueness if an adequate limiting instruction accompanies the wantonly vile aggravating language. Strong's argument disregards that instructions 16 and 21, following MAI–CR3d 313.40, contain such a limiting instruction.

Strong further argues that the limiting instruction, which required the jury to find that he "committed repeated and excessive acts of physical abuse upon [the victim] and the killing was therefore unreasonably brutal," can only pass constitutional mus-

---

10. Section 565.032.2 enumerates the statutory aggravating circumstances for murder in the first degree. The seventh aggravating circumstance is when the murder "was outrageously or wantonly vile, horrible or inhuman

in that it involved torture, or depravity of mind." Sec. 565.032.2(7).

11. Instruction 21 was for Count II and substituted Zandrea Thomas as the victim.

ter "if the 'physical abuse' connotes conscious suffering by the victim." He cites *Proffitt v. Florida*, 428 U.S. 242, 255, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), to support this contention.

In contrast to section 565.032.2(7), Florida's statutory aggravator at issue in *Proffitt* authorized imposition of the death penalty if the crime was "especially heinous, atrocious, or cruel." The Florida Supreme Court interpreted that aggravator to authorize the death penalty only in the instance of a "conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Proffitt*, 428 U.S. at 255, 96 S.Ct. 2960. The U.S. Supreme Court held that the interpretation of that statute by the Florida Supreme Court provided adequate guidance for imposing sentences in capital cases and affirmed the defendant's death sentence. *Id.* at 255–56, 96 S.Ct. 2960.

Florida's interpretation of its statutory aggravator is inapposite to the instant appeal, and *Proffitt* does not support Strong's vagueness claim. In Missouri, "evidence that the murder victim or other victims at the murder scene were beaten or evidence that numerous wounds were inflicted upon a victim will support the aggravating circumstance" in section 565.032.2(7). *State v. Griffin*, 756 S.W.2d 475, 490 (Mo. banc 1988). Moreover, Strong's claim that this instruction is constitutionally infirm has been repeatedly rejected by this Court. *State v. Johns*, 34 S.W.3d 93, 115 (Mo. banc 2000); *State v. Barnett*, 980 S.W.2d 297, 309 (Mo. banc 1998); *State v. Ervin*, 979 S.W.2d 149, 166 (Mo. banc 1998); *State v. Carter*, 955 S.W.2d 548, 559 (Mo. banc 1997).

### 2.

■ Strong next contends that insufficient evidence existed to submit the instruction for the depravity of mind statuto-

ry aggravator to the jury. Both victims received "numerous wounds." *Griffin*, 756 S.W.2d at 490. The medical examiner testified that Eva had been stabbed 21 times and had five slash wounds and that two-year-old Zandrea was stabbed nine times and had 12 slash wounds. One of the police officers who arrived immediately after the murders testified that both victims had been slashed across the abdomen, causing their intestines to protrude. He testified that, in the room where the victims were found, there was blood "over the bed linen, the walls, the dresser, the TV, on the bodies." Another officer testified that both victims were "lying in large pools of blood" and that Zandrea's "throat was cut to the point where she was nearly decapitated." Sufficient evidence existed to submit this instruction to the jury as to both victims. This point is denied.

### K. Improper Statements by Prosecutor During Voir Dire, Guilt and Penalty Phases (Strong's point 10)

Strong claims the trial court erred and plainly erred in overruling defense counsel's objections, not striking the venire panel, and not declaring a mistrial *sua sponte* because of the prosecutor's arguments in voir dire, the guilt phase, and the penalty phase. Strong contends the prosecutor argued facts outside the record, misstated the law and the facts, improperly personalized the case, and argued irrelevant victim impact evidence.

### 1. Allegations of Preserved Error

#### a. Statements in Voir Dire

■ Strong objected to the following statement by the prosecutor during voir dire: "[I]in most cases, we don't seek death, we don't ask for a death sentence in most first degree cases." Approximately 50 pages later, Strong also objected to the following statement by the prosecutor:

"But there are sometimes certain facts that may be so overwhelming and overbearing that they impact a person's ability to be fair and impartial. We only do that in very rare instances, but—" In both instances, the prosecutor, with the judge's approval, rephrased the statements. Following the second statement, Strong unsuccessfully requested the trial court to discharge the entire venirepanel, but the trial court instructed the jury to disregard the prosecutor's former statement.

Nonetheless, Strong argues the combination of these statements amounted to unsworn testimony by the prosecutor that "he had compared this case to others and found this one worse than most, deserving of death." *Cf. State v. Storey*, 901 S.W.2d 886, 900–01 (Mo. banc 1995) (prosecutor improperly stated during penalty phase closing argument: "This case is about the most brutal slaying in the history of this county."). Strong fails to consider either statement in context or to take into account that 50 pages of voir dire occurred between them.

In making the first statement, the prosecutor was responding to this statement by the defense: "Do you understand that— everybody understands it's just the prosecutor is asking for the death penalty? It's not the Judge, it's not the law, just the prosecutor who's asking for that particular form of punishment?" The prosecutor then explained to the jurors that the law prescribes a particular process for those cases in which he decides to ask for the death sentence. The statement was self-invited by Strong's implication that the prosecutor was not following the law by asking for the death penalty. *State v. Jones*, 979 S.W.2d 171, 176 (Mo. banc 1998) (prosecutor may rebut defense counsel's questionable line of argument); *see State v. Wilborn*, 525 S.W.2d 87, 94–95 (Mo.App. 1975) (defendant injected issue of failure to

testify, thereby inviting prosecutor's comment).

The second statement occurred during the prosecutor's attempt to elicit any bias of the venirepanel regarding life in prison and the death sentence. He asked: "Is there anyone who would automatically exclude life without eligibility for probation and parole and automatically vote for death?" He explained the questions help the attorneys to "pick a jury that's going to be unbiased, fair, impartial to everybody in the situation. But there are sometimes certain facts that may be so overwhelming and overbearing that they impact a person's ability to be fair and impartial."

Nothing the prosecutor said in either statement was improper when viewed in full context. Contrary to Strong's assertion, those remarks did not "encourag[e] the jury to believe that this case was appropriate for death" because of the prosecutor's review of the cases he had tried. Furthermore, Strong did not request any additional relief after the trial court instructed the jury to disregard the second remark.

■ In order to establish the necessity of striking the entire panel for improper comments, Strong "must demonstrate that the comments were 'so inflammatory and prejudicial that it can be said that a right to a fair trial has been infringed.'" *State v. Thompson*, 985 S.W.2d 779, 789 (Mo. banc 1999) (quoting *State v. Evans*, 802 S.W.2d 507, 514 (Mo. banc 1991)). He has not met this requirement.

### b. Statements in Closing Argument of the Guilt Phase

#### i.

■ The prosecutor made the following statement during closing argument: "It's just as important what you didn't hear in that defense argument, and you

didn't hear anything about what was going on in that room. Now, is it possible—you saw the injuries. You heard the doctor testify. Is it possible—and the doctor told you—" Strong objected, claiming this was an improper comment on his failure to testify that violated his state and federal constitutional rights. *See* U.S. Const. amend. V; Mo. Const. art I, sec. 19. Strong also requested a mistrial, which was denied.

During his closing argument, the defense counsel had stated: "[The prosecutor] wants you to suppose, he wants you to assume, he wants you to put the scene into your head. To concentrate on the bedroom rather than the facts." The state argues on appeal that the prosecutor's remarks were intended to point out the defense counsel's "failure to discuss the events of the crime in his closing argument."

After Strong's motion for a mistrial was denied, the prosecutor continued with closing argument and shortly returned to the same discussion: "[The defense counsel] says 'hey, [the prosecutor] want[s] you [the jurors] to concentrate on the bedroom.' You bet I want you to concentrate on the bedroom. I don't want you in the bathroom, living room, or the front bedroom [or] out on the back porch, because nothing happened there. It all happened in that bedroom."

■■■■ In considering Strong's claim "of an improper comment on his right to remain silent," this Court "must also consider the comment in the context in which it appears." *State v. Neff,* 978 S.W.2d 341, 345 (Mo. banc 1998). "[W]hen arguments made by the prosecutor do not contain direct and certain references to the failure of an accused to testify," an appellate court will only interfere if the "record shows that the trial court abused its discretion to the prejudice of the appellant." *State v.*

*Rothaus,* 530 S.W.2d 235, 237 (Mo. banc 1975). Based on the context of the prosecutor's statements, Strong has not established that the remark was a reference to his failure to testify or that the trial court abused its discretion in allowing it.

### ii.

■■■ Strong claims the trial court improperly permitted these statements expressing the prosecutor's personal opinions or beliefs: "And you know what? I will not make a single apology to anybody for putting those pictures up there. I won't do that. I won't do that because he did it." Strong objected and requested a mistrial.

■■■ "Prosecutors may make statements that indicate their opinion of the defendant's guilt, where it is apparent that the opinion is based on evidence in the case." *State v. Clemons,* 946 S.W.2d 206, 229 (Mo. banc 1997). These remarks "merely suggest[ ] that the evidence adduced at trial supports a finding of guilt," and they do not suggest knowledge of outside facts or reflect improper personalization by the prosecutor. *State v. Simmons,* 944 S.W.2d 165, 182 (Mo. banc 1997). The trial court did not abuse its discretion in allowing these statements.

### iii.

■■■ Strong objected to the following remarks claiming the prosecutor was arguing facts outside the record: "I wish this was, and it isn't, it's not an episode of CSI. If it was, and I wish it was, I wish it was because then—" The trial court overruled Strong's objection. The prosecutor continued: "I wish it was an episode of CSI, because if it was, every little bitty thing would fall right into place in one hour. Instead of several days, we would have had all of that wrapped up and it would all

have pointed to Richard Strong, as it does, and we would all walk away from this thing."

Strong argues that "[b]y referring to that program, [the prosecutor] encouraged the jury to consider facts outside the record and to consider those facts and the results of those hypothetical cases." By referencing this hour-long television crime drama, the prosecutor was merely referring to the jurors' common knowledge that, unlike in the real world, investigations on television typically wrap up in less than an hour. *See State v. Christeson*, 50 S.W.3d 251, 268–69 (Mo. banc 2001). The trial court did not abuse its discretion in permitting these remarks.

### 2. Allegations of Unpreserved Error

■ Strong did not object to the remainder of the prosecutor's statements that he alleges on appeal were improper. He is entitled only to plain error review of these claims. Rule 30.20. Under plain error review, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.*

### a. Statements in the Guilt Phase

#### i.

Strong argues the prosecutor misstated the law during closing argument by arguing and thereby incorrectly redefining "deliberation" as follows: "The deliberation is not cool, it's not something that has to be reflected on, it is coolly reflected upon for any length of time, no matter how brief." This claim has already been addressed and denied in section III.F.3 of this opinion.

#### ii.

■ Strong also claims the trial court erred by permitting the prosecutor to state: "You recall the evidence that went up there, and as many of those pictures as possible contain as many wounds and injuries suffered by them as possible for that very reason, so we don't have 400 of these pictures up there, or however many we have. They were kept to a minimum." Strong claims that the prosecutor assured him he would admit 40 or fewer photographs, but by "referring to 400 photographs he could have adduced," the prosecutor "succeeded in showing those images anyway." The state responds that the prosecutor's argument was a direct rebuttal to Strong's repeated arguments that the prosecution was trying to elicit the jury's sympathy by showing numerous crime scene and autopsy photographs.

During Strong's closing argument, he said that the prosecutor concentrated on showing pictures "in hopes that it would affect [the jurors] so deeply and so greatly that [they] would ignore other things of critical importance" and to elicit prejudice and passion from them.

Considering the remarks in context, no manifest injustice occurred from the prosecutor's statements. *Cf. McDonald v. Delo*, 897 F.Supp. 1224, 1246 (E.D.Mo.1995) (in capital closing argument, no error in overruling objection to prosecutor's display of envelope containing photos not introduced into evidence; no suggestion photos contained matters not in evidence and no effort by prosecutor to introduce envelope's contents to jury).

### b. Statements in the Penalty Phase

#### i.

■ Strong's remaining allegations of error from improper statements all occurred during the prosecutor's penalty phase closing argument. Near the beginning, the prosecutor said: "I'll have an opportunity to argue why I think death is

the appropriate punishment in this case, why I think you should sentence Richard Strong to death based upon the evidence and the information that you received in this case. Why I think that should be the sentence imposed upon him for murder in the first degree of both Eva Washington and Zandrea Thomas."

■ Strong maintains the prosecutor "relied upon his position as elected prosecutor ... to encourage the jury to vote for death." The prosecutor, however, "merely expressed his opinion as to whether the death penalty should be imposed. A prosecutor may state his personal opinions on whether the death penalty should be imposed so long as that argument is fairly based on the evidence." *State v. Johns*, 34 S.W.3d 93, 117 (Mo. banc 2000). Because these statements were based on the evidence, no error occurred.

### ii.

■ Strong contends this statement improperly defines "reasonable doubt:" "If I have proven that beyond a reasonable doubt to your satisfaction as a jury, then that aggravating circumstance exists." Strong correctly points out that "[a]n attorney is free to discuss reasonable doubt during closing argument, but he cannot attempt to define reasonable doubt" nor can he "undertake to define reasonable doubt in wholly erroneous terms." *State v. Williams*, 659 S.W.2d 778, 781 (Mo. banc 1983) (citations omitted).

The prosecutor's statement was not intended to define "reasonable doubt," instead it instructs the jurors that if he proved to them a statutory aggravator beyond a reasonable doubt, then that aggravator existed for purposes of the penalty phase. *See* sec. 565.030.4. Even if this statement improperly defined "reasonable doubt," which it did not, "the prejudicial effect of the comment must be viewed in context and in light of the proper definition given in the instructions." *State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003). No manifest injustice resulted from this statement.

### iii.

■ Strong argues the following statement "encouraged the jury to ignore its constitutional obligation unanimously and beyond a reasonable doubt to find the facts upon which the death penalty rested." The prosecutor stated: "And remember what I said earlier, the instructions are as important for what they don't say as what they do say. At that point it doesn't say must decide whether there are facts and circumstances in statutory aggravation. It says at that point in aggravation of punishment, taken as a whole, which warrants the imposition of death." This language tracks section 565.032.1(2) and MAI–CR3d 313.41A, and it is not erroneous.

### iv.

■ Strong alleges the prosecutor improperly defined "reasonable doubt" in this statement: "If, in your opinion, your view, your conscience what's true and just in this case at that point is the imposition of a death sentence on Richard Strong, then you consider evidence in mitigation, and determine if that mitigation outweighs that evidence in aggravation." This language tracks section 565.030.4(3) and MAI–CR3d 313.44A. It is not erroneous.

### v.

■ Strong asserts the following statements improperly expanded the scope of victim impact evidence:

And they're not the only victims in this case. Consider all of the evidence, all of the evidence that you saw in this case, and you will see just how much

this tragedy affects people. It affected everybody that came into this courtroom, and who knows how many people beyond what you saw this case has done.

....

You can't describe the pain and suffering that so many other people have to experience because of the conduct of Richard Strong.... Michelle Brady, when she tried to read about her friend, she could hardly get the words out, after two and a half years could barely read about the life of her good friend.

You saw the effect and the impact that it had on his ex-wife, on Kim Strong.

You saw the impact, and you know the impact and the pain and the suffering that it has caused to his mother, and that it has caused to his children, and that it has caused to his brothers, and that is has caused to his sisters and their children.

Strong contends the prosecutor's argument "far exceeded the parameters discussed in *Payne* [*v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991),] and codified in section 565.030.4."

Section 565.030.4 permits, "within the discretion of the court, evidence concerning the murder victim and the impact of the crime upon the family of the victim and others." *Payne* held that if a state "chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment [of the U.S. Constitution] erects no per se bar." 501 U.S. at 827, 111 S.Ct. 2597. This holding is based on the principle that justice is due to the accused and also to the accuser in order to maintain fairness. *Id.* "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Id.* at 825, 111 S.Ct. 2597.

Neither section 565.030.4 nor *Payne* indicates that the prosecutor's discussion of the victim impact evidence exceeds the boundaries of relevant evidence or that it was so "unduly prejudicial" as to render the trial "fundamentally unfair." *See* sec. 565.030.4; *Payne*, 501 U.S. at 825, 111 S.Ct. 2597. Furthermore, the prosecutor was reiterating Strong's argument "about his family, about his children, about his nieces, about his nephews, about his mother's grandchildren, a multitude of grandchildren" and how they would be affected regardless of which punishment Strong received. As the defense stated: "The consequences of what has occurred touch everyone who came into this courtroom and told you about [Strong]." No manifest injustice resulted from these statements by the prosecutor concerning victim impact evidence.

### vi.

■ Strong contends the following remarks by the prosecutor misstated the law and the facts by encouraging the jury to believe that a sentence of life without parole was not punishment: "But should we allow Richard Strong to escape justice because we can't provide complete justice? ... [H]e would escape justice, he would escape paying the price that he ought to be paying for what he did in this case, if he is sentenced to life without parole."

■ "[I]t is proper for a prosecutor to seek and request the most severe death penalty." *State v. Clayton*, 995 S.W.2d 468, 480–81 (Mo. banc 1999). In *State v. Ringo*, it was held not error to permit the prosecutor to characterize the more lenient sentence—life in prison without the possibility of parole—as a "reward." 30 S.W.3d 811, 821 (Mo. banc 2000). In *State v. Deck*, it was also held not error to permit

the prosecutor to argue that the death penalty was the "only sentence the jury could impose to show justice and mercy . . . to the people in the courtroom." 994 S.W.2d 527, 543–44 (Mo. banc 1999). The prosecutor's argument in this case was within the broad scope of permissible argument during the penalty phase of a first degree murder case. *Ringo*, 30 S.W.3d at 821. No manifest injustice resulted from this argument.

## L. Proportionality Review: Section 565.035.3 (Strong's point 11)

Strong included in his brief a point relied on that claims his death penalty was "imposed under the influence of passion and the evidence does not support the existence of one statutory aggravator." This claim must be addressed as part of this Court's independent proportionality review pursuant to section 565.035.3, which requires the Court to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant.

Having thoroughly reviewed the record, this Court concludes that there is no evidence to suggest that the punishment imposed was a product of passion, prejudice, or any other arbitrary factor.

■ The trial court's findings are next reviewed to determine if the evidence supports, beyond a reasonable doubt, the existence of an aggravating circumstance and any other circumstance found. In this case, the jury unanimously found two statutory aggravating circumstances as grounds for considering the death sentence. *See* sec. 565.032.2(2), (7). The evidence supports, beyond a reasonable doubt, a finding that Strong committed the murders of Eva and Zandrea while he was engaged in the commission of another unlawful homicide and that both murders were outrageously or wantonly vile, horrible or inhuman in that they involved depravity of mind.

This Court has upheld sentences of death in similar cases where the defendant murdered more than one person. *State v. Tisius*, 92 S.W.3d 751 (Mo. banc 2002); *State v. Wolfe*, 13 S.W.3d 248 (Mo. banc 2000); *State v. Middleton*, 998 S.W.2d 520 (Mo. banc 1999); *State v. Johnson*, 968 S.W.2d 123 (Mo. banc 1998); *State v. Hutchison*, 957 S.W.2d 757 (Mo. banc 1997). This Court has also upheld death sentences in cases where the murder involved acts of brutality and abuse that showed depravity of mind. *State v. Williams*, 97 S.W.3d 462 (Mo. banc 2003); *State v. Cole*, 71 S.W.3d 163 (Mo. banc 2002); *State v. Christeson*, 50 S.W.3d 251 (Mo. banc 2001); *State v. Storey*, 40 S.W.3d 898 (Mo. banc 2001); *State v. Smith*, 32 S.W.3d 532 (Mo. banc 2000).

The penalty in this case is neither excessive nor disproportionate in light of the crimes and the strength of the evidence. Strong's point is denied.

## M. State's Motion to Strike Portions of Appellant's Brief and Appendix

■ The state filed a motion to strike references by Strong that are outside the record on appeal. Strong included an In-

ternet printout of a newspaper article in the appendix of his brief and cited to that article in his argument for two different points. The state argues that the newspaper article is a matter outside the record and is improper for consideration in this appeal. *See* Rule 30.04 (rule governing proper contents of record in criminal appeal).

"The information contained in the appendix was neither introduced in the trial proceedings nor made a part of the appellate record by stipulation or order of court under prescribed procedures for correcting and supplementing transcripts on appeal." *State v. Lee,* 556 S.W.2d 25, 29 n. 3 (Mo. banc 1977) (vacated on other grounds by *Lee v. Missouri,* 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979)). This Court declines to consider the article and the references to it in evaluating Strong's claims of error. *See State v. Tokar,* 918 S.W.2d 753, 762 (Mo. banc 1996); *State v. Burrington,* 371 S.W.2d 319, 320–21 (Mo.1963) (matters not included in transcript or record on appeal improper for consideration on appeal).

This motion is sustained. The references to the article and the article itself are ordered stricken from Strong's brief and appendix.

## IV. Conclusion

The judgment of the trial court is affirmed.

All concur.