**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Alfred J. SUPINSKI, Defendant-Appellant.**

No. 8297.

Springfield Court of Appeals.

Missouri.

May 4, 1964.

Charles M. Shaw, Clayton, for defendant-appellant.

Paul Boone, Pros. Atty., Gainesville, for plaintiff-respondent.

HOGAN, Judge.

■ Defendant Alfred J. Supinski was jointly charged by information with the offense of stealing property of another having a value of more than $50.00, Section 560.156, RSMo 1959, V.A.M.S. Upon motion he was granted a severance, and the jury found him guilty but was unable to agree upon a punishment. The trial court thereupon fixed his punishment at confinement in the county jail for a period of six months and a fine of $500.00; the defendant has appealed. Although the information upon which the defendant was tried charged him with stealing property having a value of more than $50.00, the verdict, judgment and sentence show that he was actually convicted of stealing property having a value of less than $50.00, and therefore jurisdiciton of the appeal is in this court. State v. Woodson, 248 Mo. 705, 708, 154 S.W. 705, 706; State v. Greenspan, 137 Mo. 149, 151, 38 S.W. 582, 583; State v. Bradley, Mo.App., 247 S. W.2d 351, 353 [2, 3]. The case is before us upon the transcript of the record; neither the State nor the defendant has filed a brief. Our review therefore extends to the assignments of error properly preserved in the motion for new trial and the essential parts of the record. Rules 27.20, 28.02 and 28.08, V.A.M.R.; State v. Brewer, Mo., 338 S.W.2d 863, 865–866 [1]; State v. Euge, Mo.App., 359 S.W.2d 369, 370 [1].

On June 16, 1962, Dr. Yoneo Honda, a dentist, was on vacation at Theodosia, on Bull Shoals Lake, in Ozark County, Missouri. During the afternoon and evening, Dr. Honda went fishing. When he returned about 11:00 P.M., he docked his boat, cleaned his fish, and retired for the evening, leaving his fishing tackle in the boat. Among his articles of fishing tackle were two open-face spinning reels, described as Garcia reels, and two flexible glass casting rods. When Dr. Honda returned to his boat about 7:00 A.M. the next morning, he discovered that both rods and reels were missing. Since he had not given

permission to anyone to use or remove the tackle, Dr. Honda immediately reported the matter to the owner of the boat dock, who in turn got in touch with the sheriff, Mr. Sallee.

At the time, the defendant, a concrete contractor who lives in Granite City, Illinois, was camped nearby with his wife and two companions. The evidence indicated that he had arrived in the area on Friday, June 15, in order to enjoy a weekend of fishing and waterskiing, and Dr. Honda recalled having seen the defendant and one of his companions on the boat dock at the time he returned from fishing on Saturday evening. The defendant and his friends departed from the area about 2:00 A.M. on June 18, and returned to St. Louis and Granite City.

Sheriff Sallee, having been notified that Dr. Honda's fishing tackle was missing, conducted a local investigation and, on the basis of that investigation, obtained a warrant for the arrest of the defendant and one of his party, a Mr. Carnahan. On June 20, together with Dr. Honda and several officers from Granite City, the sheriff went to the defendant's home, where he "named over [the] different rods and reels that was reported * * * missing from the dock," and asked Mr. Supinski if he had any of the articles. According to the State's evidence, the defendant then admitted having taken the fishing tackle from Dr. Honda, although the defendant later denied having made any such admission. Being advised by the defendant that the missing tackle was in Mr. Carnahan's car, the officers then went to Carnahan's place of employment and searched the Carnahan automobile, but were unable to locate the missing articles. The defendant was then taken in custody, and, after obtaining a search warrant, the officers found Dr. Honda's fishing tackle concealed on defendant's premises. The State's evidence was that the defendant, being again confronted and shown the fishing tackle (bearing Dr. Honda's name) which had been found at his home, again admitted that he

"took," or "stole," the missing items, although the precise words used by the defendant were a matter of some controversy. The defendant was then charged as we have indicated.

The defendant, testifying in his own behalf, conceded that he had been in the Theodosia area during the time in question and gave a rather elaborate account of his activities while he was there, but he vigorously denied having taken the fishing tackle, or having any knowledge of how it came to be on his premises, stating that he "never did see [it] on my property or in my home." Mr. Supinski denied having said that "we stole" or "we took" the fishing tackle, saying that his words "were similar, but had a lot different meaning." It was shown that the defendant had two previous felony convictions, one in 1952 and another in 1957.

The appellant's first assignment of error is directed to the State's failure to exercise its peremptory challenges to the polls. The objection, as we understand it, is not that his right to make peremptory challenges was in any way denied or abridged, nor that the panel from which the jury was selected was not qualified. The defendant simply maintains that he has been prejudiced because the State failed to exercise its peremptory challenges.

The record before us indicates that after the defendant had waived formal arraignment and entered a plea of not guilty, twenty-four members of the regular jury panel (the number required by Section 546.-210) were summoned and qualified. There is nothing to show that the defendant made any challenge to the array, or sought to conduct any voir dire examination of the prospective jurors, or made any challenges for cause. The jury list was then delivered to the prosecutor, who returned it without indicating any strikes, and counsel then objected that he was "unable to make my statutory eight [challenges] because he hasn't made his statutory four." The trial court then stated that he considered the State to

have waived its peremptory challenges and assured counsel that he might proceed to make his from the names on the jury list. The defendant now insists that the court should have forced the State to make its peremptory challenges.

■ We confess that we find it difficult to understand the force of defendant's point. Defendant made no objection to the impaneling of the jury other than in his motion for new trial, and we have some doubt that the point is properly preserved. State v. Long, 324 Mo. 205, 211–212, 22 S.W.2d 809, 812 [10, 11]. If we consider the matter as being properly before us, we find it difficult to understand how the defendant can have been in any way prejudiced by the State's failure to exercise its peremptory challenges. Those cases which discuss the subject in general terms emphasize that the right to make peremptory challenges in a criminal case, while it is a valuable and substantial right, is purely a right to reject, and not a right of selection.[1] The right to exercise peremptory challenges in a criminal case is a right which may be waived either by the State or by the defendant, where a fair opportunity has been given to exercise it;[2] and where, as in this case, the defendant is in no way hindered in the free exercise of his peremptory challenges, the State's action could not affect him prejudicially. This claim of error is denied.

The defendant next maintains that the trial court erred in refusing to exclude the sheriff, Mr. Sallee, and Dr. Honda, the prosecuting witness, from the courtroom while the trial was in progress. At the commencement of the trial, the defendant requested that the witnesses be segregated, and his motion was granted. The trial court excepted the sheriff from his order, however, as well as the prosecuting witness. It appears that Sheriff Sallee was at the time attending the court and was not excluded for that reason, and it also appears that Dr. Honda testified first and was not later recalled, at least not in the presence of the jury.

■ We think this assignment is without merit. Segregating or requiring exclusion of the witnesses from the courtroom during trial, or "putting them under the rule," as it is sometimes called, is a matter which rests almost entirely in the trial court's discretion.[3] It has also been recognized from an early day that the trial court may, in its discretion, except individual witnesses from its order of exclusion to meet the needs of a particular situation, and this includes prosecuting witnesses and officials of the court.[4] The rule may be " * * * so molded as to meet the requirements of justice in each particular case," State v. Hughes, supra, 71 Mo. at 636, and we can perceive no abuse of the trial court's discretion in this case.

■ Error is assigned to the reception of testimony by Dr. Honda concerning the value of the property stolen. The defendant's claim of error is that Dr. Honda was permitted to state the value which he per-

1. See, e. g., Pointer v. United States, 151 U.S. 396, 407–413, 14 S.Ct. 410, 38 L.Ed. 208, 213–215; Philbrook v. United States, 8 Cir., 117 F.2d 632, 635–636 [1–5] [6, 7], cert. den. 313 U.S. 577, 61 S.Ct. 1097, 85 L.Ed. 1534; State v. Hays, 23 Mo. 287, 290, 291–292.

2. State v. Long, supra, 324 Mo. at 211–212, 22 S.W.2d at 812 [10, 11]; State v. Page, Mo.App., 186 S.W.2d 503, 505 [3]; Application of Williams, 85 Ariz. 109, 333 P.2d 280, 283 [1] [2, 3]; State v. Hayes, 169 Kan. 505, 219 P.2d 442, 444 [2]; 31 Am.Jur., Jury, § 240, p. 204.

3. State v. Daegele, Mo., 302 S.W.2d 20, 24 [8, 9]; State v. Lord, Mo., 286 S.W. 2d 737, 741 [13–16]; State v. Tummons, Mo., 34 S.W.2d 122, 123–124 [3, 4]; State v. Compton, 317 Mo. 475, 477, 296 S.W. 137, 138 [4].

4. State v. Daegele, supra, n. 3, 302 S.W. 2d at 24 [8, 9]; State v. Hamilton, 340 Mo. 768, 778, 102 S.W.2d 642, 648 [20]; State v. Tummons, supra, n. 3, 34 S.W.2d at 123–124 [3, 4]; State v. Hughes, 71 Mo. 633, 636. See also Kelley's Crim.L. & Proc., § 366, pp. 312–13 (4th ed. 1928).

sonally placed on the fishing tackle, rather than the reasonable market value.

We cannot agree that Dr. Honda's testimony went solely to the value which he, as an individual, placed on his fishing tackle. It is true that the two casting rods represented special purchases on his part—they were referred to as "custom-made," or "tailor-made"—but during the course of his direct examination, Dr. Honda was asked what, in his opinion, was the reasonable market value of the two reels, and he answered, "Oh, fifteen and twenty dollars, market value, I would say." He clarified his answer by saying that this meant $15.00 for one and $20.00 for the other. This evidence of the value of the property taken was at least as definite as that held to be sufficient in State v. Brewer, Mo., 286 S.W.2d 782, 783, and the defendant takes no account of the fact that Dr. Honda testified as to the original cost of the items, the length of time he had owned them, and the use to which they had been put, and that the articles themselves were exhibited to the jury. Such proof in itself would constitute some evidence of value, State v. Brewer, supra, 286 S.W.2d at 783 [1, 2]; State v. Bresse, 326 Mo. 885, 892, 33 S.W.2d 919, 921 [3]; State v. Stanley, 123 Mo.App. 294, 299, 100 S.W. 678, 679, and we conclude there was no error in receiving Dr. Honda's evidence on that issue.

■■ The defendant contends that the trial court erred in refusing his motion for judgment of acquittal which was filed, so the record shows, at the close of the State's case-in-chief. Inasmuch as the motion was not renewed at the close of all the evidence, we consider that any error in denying the defendant's motion for judgment of acquittal has been waived. State v. Benjamin, Mo., 309 S.W.2d 602, 604 [1, 2]; State v. Morris, Mo., 307 S.W.2d 667, 671 [2]; State v. Roseberry, Mo.App., 283 S.W.2d 652, 654–655 [1, 2]. Procedural matters aside, however, we view the evidence as being amply sufficient to support the verdict. The missing property was found concealed on premises controlled by the defendant in Granite City within four days after it was taken; it was positively identified and the substance of defendant's explanation of its presence at his home was simply that he was unable to explain it. The defendant's recent possession of the stolen property, while it was not proof of his guilt as a matter of law, was sufficient to submit the case to the jury, State v. Reagan, Mo., 328 S.W.2d 26, 29–30 [6, 7]; State v. Oliver, 355 Mo. 173, 175–176, 195 S.W.2d 484, 485–486 [2–5] [6, 7], and the testimony that the defendant admitted taking the fishing tackle could reasonably have been accepted as direct evidence of his guilt. State v. Brewer, Mo., 325 S.W.2d 16, 20. We must accept as true all evidence in the record tending to show defendant's guilt, together with all inferences reasonably to be drawn therefrom, State v. Brewer, supra, 325 S.W.2d at 20; State v. Morris, supra, 307 S.W.2d 667, 668 [1]; and viewed in this light, the evidence supports the judgment of conviction.

■ The defendant next says that the trial court erred in failing to declare a mistrial because the jury improperly communicated with the prosecuting witness during the trial. The incident which forms the basis for this assignment occurred after the court had recessed at the end of the first day of trial, and we emphasize, before the cause had been submitted to the jury. It was agreed by counsel that the jury be permitted to separate. Having been admonished by the court not to communicate with anyone on any subject connected with the trial, the jurors filed from their box and left the courtroom. After the jury had retired, counsel for the defendant approached the bench and asked that a mistrial be declared, "for the reason that the complaining witness, Dr. Honda, shook the hand of four jurors as they left the courtroom."

The trial court immediately swore and examined Dr. Honda, Mr. Shaw (defendant's counsel), and one or two spectators, including Mr. Fain, an attorney. Dr.

Honda testified that as the jury was leaving the courtroom, he walked forward to confer with the prosecutor. As he was making his way toward the bench, one of the jurors extended his hand and Dr. Honda shook hands with him. One, and possibly two, other jurors followed suit and Dr. Honda also shook hands with them. Neither the prosecuting witness nor the jurors spoke. Mr. Fain, who had been sitting nearby, observed that a great many people in the audience had shaken hands and had exchanged greetings generally. He testified that it was not unusual, in his experience, for the spectators, jurors and others present to visit a short time and engage in casual conversation at the end of the day when court recessed. The trial court pursued its inquiry the following day, after the verdict had been returned. Mr. Rippee, an ordained minister, testified that he had not only shaken hands with Dr. Honda but had greeted a number of other people in a similar manner. Mr. Rippee said that as he was leaving the jury box, he and Dr. Honda almost "run together," and feeling somewhat embarrassed, Mr. Rippee had extended his hand as an apologetic gesture. Mr. Piland, another juror, indicated that he had also greeted Dr. Honda with a handshake, and said he would have "shook hands with the other fellow [the defendant] just as quick." It does not appear from the record that the jurors concerned actually spoke with Dr. Honda on any subject, nor that they made any gesture more demonstrative than a perfunctory greeting.

It is true that a prosecuting witness should avoid even innocent visiting with the jurors, but in this case, there appears to have been no conversation between Dr. Honda and the jurors, and it does not follow that prejudice resulted to the defendant merely because Mr. Rippee, Mr. Piland and another juror shook hands with him. The trial court acted promptly, and we think effectively, to determine if there had been any improper communication between the prosecuting witness and the jurors, and determined that there had been none. In these circumstances, the trial court is vested with a broad discretion in determining whether a mistrial should be declared, and upon the record presented, the court did not abuse its discretion in denying the mistrial and refusing to discharge the jury.[5]

■ The defendant's final assignment is that Instructions One, Three, Four, Six, Eight and Nine are improper statements of law and [are] highly prejudicial to the defendant. This assignment is so indefinite and lacking in particularity that it preserves nothing for review here. Rule 27.20, V.A.M.R.; State v. Martin, Mo., 347 S.W. 2d 680, 682–683 [5, 6].

We have examined those formal parts of the record which we are required to examine by Rule 28.08, V.A.M.R. The information is sufficient in form. State v. Brewer, Mo., 338 S.W.2d 863, 866 [2]. The verdict is irregular on its face, inasmuch as it finds the defendant guilty of "petty stealing," rather than stealing the property of another of the value of less than $50.00. See State v. Brewer, supra, 338 S.W.2d at 867 [3, 4], and State v. Jacobs, Mo., 321 S.W.2d 450, 452 [3]. In light of the record, however, the verdict is not subject to reasonable doubt, and in any event, the defendant cannot complain that he should have been convicted of a higher degree of the offense charged. Otherwise, the punishment fixed is within the statutory limits, allocution was afforded, and the judgment is sufficient in form and substance.

The judgment is affirmed.

RUARK, P. J., and STONE, J., concur.

5. See State v. Miles, Mo., 364 S.W.2d 532, 536 [5, 6]; State v. Akers, Mo., 328 S.W. 2d 31, 34–35; State v. McGee, 336 Mo. 1082, 1092, 83 S.W.2d 98, 104 [7]; State v. Shipley, 171 Mo. 544, 550–551, 71 S.W. 1039, 1040–1041; State v. Stubblefield, 157 Mo. 360, 366, 58 S.W. 337, 339.