**STATE of Missouri, Plaintiff–Respondent,**

v.

**Antonio AMERSON, Defendant–Appellant.**

**No. 27989.**

Missouri Court of Appeals,
Southern District,
Division One.

May 7, 2008.

Motion for Rehearing or Transfer to Supreme Court Denied May 29, 2008.

Application for Transfer Denied
Aug. 26, 2008.

Ferderick J. Ernst, Asst. Appellate Defender, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, MO for respondent.

JEFFREY W. BATES, Judge.

Antonio Amerson (Defendant) contends the trial court erred in permitting the State to waive its final peremptory challenge so as to exclude Charles Jones (Jones), an African–American vernireperson, from the jury. Defendant argues that, for the reasons articulated in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the State's action violated the rights of Jones and Defendant to equal protection. This Court affirms.

Defendant was charged by amended information with committing the class B felony of possessing a controlled substance with the intent to deliver. *See* § 195.211.[1] Defendant was alleged and found to be a prior offender. *See* § 558.016.2. After the jury convicted Defendant of the charged offense, the trial court determined punishment and sentenced Defendant to serve 10 years in prison. *See* § 557.036.4(2).

Defendant does not challenge the sufficiency of the evidence to support his conviction, and the sole point on appeal is whether the trial court committed an error during the jury-selection process. Therefore, our summary of the relevant facts is confined to that issue.

---

1. All references to statutes are to RSMo Cum. Supp. (2005) unless otherwise indicated. All references to rules are to Missouri Court Rules (2006).

Defendant is African–American. Prior to trial, the court summoned 43 potential jurors. Two persons were excused before the trial commenced, and one person failed to appear in response to the summons. That left a group of 40 venirepersons present for *voir dire*. There were five African–Americans in that group: No. 3, Mike Cooper; No. 7, Roy Macklin; No. 14, Helen Davis; No. 26, Erma Tipler; and No. 31, Jones. One venireperson was excused because of a physical problem, and three were stricken for cause. That left 36 qualified jurors in the venire. The State and Defendant, in that sequence, each exercised their six peremptory challenges. *See* § 494.480.2(2) RSMo (2000). Three of the jurors peremptorily challenged by the State were African–American. They were Macklin, Davis and Jones.

After peremptory challenges were announced, Defendant raised a *Batson* objection to the State's exercise of peremptory challenges against Macklin, Davis and Jones. The prosecutor used a peremptory challenge against Macklin because he failed to disclose a prior theft arrest, and he believed one of his relatives had been treated unfairly by police. Davis was challenged because her husband had been prosecuted for murder by the same prosecutor who was representing the State in the case at bar. After finding the prosecutor's reasons were race-neutral and not pretextual, the trial court overruled the *Batson* objections to the State's exercise of peremptory challenges as to these two venirepersons.[2]

When the discussion turned to Jones, however, the prosecutor announced that he was withdrawing his peremptory challenge because it had been based on erroneous information that Jones lived in a "drug house." The trial court offered the State another peremptory strike, but the prose-

cutor chose not to exercise it. The court noted that the State was not required to exercise any or all of its strikes, so the first 12 jurors on the venire would be seated. Defense counsel then stated, "[b]ased on his refusal to challenge—never mind, it ended up the same way." After this equivocal statement, there was no request that the trial court take any action. The court removed the 13 surplus venirepersons, which included Jones, from the jury list because they were no longer needed after the first 12 were seated. African–Americans Cooper and Tipler served on the jury that heard Defendant's case.

After Defendant was convicted, counsel filed a motion for new trial. The motion specifically asserted that the trial court should have required the State to exercise its sixth peremptory challenge. Defendant argued that, by refusing to strike another juror, the State conducted impermissible racial discrimination in violation of *Batson* that effectively prohibited Jones from serving on the jury. The motion was overruled, and this appeal followed.

■■■ Defendant's point on appeal contends the trial court erred in permitting the State to waive its final peremptory challenge so as to exclude Jones from the jury. The State argues that Defendant has failed to preserve the point for appeal. This Court agrees. When the prosecutor waived the State's last peremptory challenge, it appears that defense counsel started to object and then changed his mind. Defendant did not ask that the State be forced to exercise its last peremptory challenge, so the court was not given an opportunity to rule upon the issue. Because Defendant did not object at trial to the prosecutor's waiver of the State's last peremptory challenge and obtain a ruling thereon, the issue is not preserved for

---

2. On appeal, Defendant has not asserted that either ruling was erroneous.

appeal. *See State v. Brown*, 953 S.W.2d 133, 139 (Mo.App.1997); *State v. Webb*, 583 S.W.2d 536, 538 (Mo.App.1979). "A trial court cannot be faulted for not taking action it was never asked to take." *State v. Smith*, 11 S.W.3d 733, 738 (Mo.App.1999).

■ In Defendant's reply brief, one of his alternative requests is that this Court review his point on appeal for plain error. *See* Rule 30.20. Plain error review involves a two-step process. *State v. Stallings*, 158 S.W.3d 310, 315 (Mo.App.2005). First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Id.* "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo.App.2005). Absent a finding of facial plain error, this Court should decline its discretion to review the claim. *Stallings*, 158 S.W.3d at 315. "If plain error is found, we proceed to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *Id.* at 315–16.

Defendant argues that the State's waiver of its last peremptory challenge, which resulted in the exclusion of Jones and other qualified venirepersons from the jury due solely to their random numerical placement on the venire, violated *Batson* and thereby deprived Defendant and Jones of equal protection. According to Defendant, this is a matter of first impression in Missouri. He suggests that this Court should follow the analysis employed in *United States v. Esparza-Gonzalez*, 422 F.3d 897 (9th Cir.2005). There, the Ninth Circuit held that the government's waiver of a peremptory challenge should be treated the same as the exercise of a peremptory challenge for purposes of a *Batson* analysis. *Id.* at 902.

Defendant's argument ignores existing Missouri precedent which has resolved this issue adversely to his position. In *State v. Elder*, 901 S.W.2d 87 (Mo.App.1995), the State exercised five peremptory challenges and waived its last one. Defendant exercised all six of his challenges. The trial court proposed to seat the first 12 jurors and remove the 13 surplus venirepersons from the bottom of the list. The first such surplus venireperson was African-American. Defendant objected to that procedure, claiming that it "amount[ed] to a deliberate exercise of a peremptory strike by the State" because it guaranteed the removal of an African-American from the jury. *Id.* at 89–90. On appeal, Elder argued that *Batson* required the State to provide a race-neutral reason for the removal of a prospective juror which the State did not strike. The western district of this Court rejected that argument because "the United States Supreme Court did not declare in *Batson* that a party must provide a race-neutral reason for removing a juror it does not, in fact, exclude by the use of a peremptory strike. The trial court—not the state—removed the juror." *Id.* at 90. In *State v. Strong*, 142 S.W.3d 702 (Mo. banc 2004), the State used only six of its nine peremptory challenges. After the defendant used all nine of his peremptory challenges, the trial court seated the jurors in their numerical sequence from the jury list. The last three potential, surplus jurors were stricken from the bottom of the list. *Id.* at 712–14. On appeal, the defendant contended that this procedure violated *Batson*. *Id.* at 712. Citing *Elder*, our Supreme Court rejected the defendant's argument and held that the trial court committed no error in striking the remaining venirepersons from the list in this manner. *Id.* at 714. This Court is constitutionally bound to follow

the most recent controlling decision of the Supreme Court of Missouri. *Savannah Place, Ltd. v. Heidelberg,* 164 S.W.3d 64, 68 (Mo.App.2005).

 Even if *Strong* were not controlling, we would reject the analysis in *Esparza–Gonzalez* as unpersuasive for the following reasons. Under the equal protection analysis articulated in *Batson* and its progeny, "[p]arties cannot exercise peremptory challenges to remove potential jurors solely based on the jurors' gender, ethnicity, or race." *State v. Johnson,* 207 S.W.3d 24, 35 (Mo. banc 2006). This case, however, does not involve the exercise of a peremptory challenge. Instead, it involves the waiver of that right by the State. It is well-settled that "the right to exercise peremptory challenges in a criminal case is a right which may be waived by the accused or by the State after a fair opportunity has been given to exercise it." *State v. Thomas,* 530 S.W.2d 265, 267 (Mo.App.1975). More importantly, the use of peremptory challenges in a criminal case "is purely a right to reject, and not a right of selection." *State v. Supinski,* 378 S.W.2d 602, 605 (Mo.App.1964). Once the State and Defendant had used all of the peremptory challenges they chose to exercise, the remaining 25 venirepersons were qualified to act as jurors. The seating of the actual jurors in Defendant's case depended solely upon their random, numerical placement on the jury list. Defendant argues that the State should have been compelled to strike a venireperson with a lower juror number in order to make room on the jury for Jones. We believe such a practice would contravene the principle that a defendant is not entitled to a jury of any particular racial composition. *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *State v. West,* 866 S.W.2d 150, 154 (Mo.App.1993); *State v. Jordan,* 751 S.W.2d 68, 73 (Mo.App.1988).

If the trial court had forced the State to exercise a peremptory challenge against someone other than Jones (whom the State had decided not to challenge), that action would have required the State to remove one qualified venireperson in order to replace him or her with another qualified venireperson solely because of the latter's race. Such a practice could, itself, raise an equal protection issue:

> The goal of the juror selection process is to seat a fair and impartial jury in a non-discriminatory way. But neither party has a duty to remove jurors to ensure that members of a specific racial or gender group are seated. *See Batson,* 476 U.S. at 85–86, 106 S.Ct. at 1717. To find such a duty would implicate the equal protection rights of the jurors struck in favor of members of a specific group. "A person's race simply 'is unrelated to his fitness as a juror.'" *Id.* at 87, 106 S.Ct. at 1718 (quoting *Thiel v. S. Pac. Co.,* 328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting)). Our justice system cannot support a racial or gender "ranking" system, which favors seating one group over another depending on the case before the court.

*State v. Paleo,* 200 Ariz. 42, 22 P.3d 35, 37 (2001).

In conclusion, Defendant has failed to facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. Consequently, we decline to engage in plain error review. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SCOTT, J., Concur.