**Antonio AMERSON, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–
Respondent.**

**No. SD 29983.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 15, 2010.

Motion for Rehearing or Transfer
Denied Nov. 8, 2010.

Application for Transfer Denied
Dec. 21, 2010.

Jessica Hathaway, St. Louis, MO, for Appellant.

Chris Koster, Atty. Gen., Daniel McPherson, Asst. Atty. Gen., St. Louis, MO, for Respondent.

JEFFREY W. BATES, Judge.

Antonio Amerson (Amerson) appeals from the denial of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing.[1] We affirm.

## I. Factual and Procedural Background

Amerson was a passenger in a car being driven by Albert Daniels. While Daniels was approaching a stop sign, Casio Armour drove up in another vehicle. Cory Clay was in the front passenger seat of Armour's vehicle. Clay flagged down Daniels and exited Armour's car. Clay suspected Daniels of stealing the speakers from Clay's vehicle. After talking for about 10 seconds, Clay pulled out a pistol and fired four shots. Daniels was killed, and Amerson was seriously wounded. He got out of the vehicle and ran between two nearby houses. Paramedics and police found Amerson lying on the ground beside a chain link fence with $989 on his person.

Sgt. Terry Mills of the Missouri Highway Patrol helped collect evidence at the crime scene. In the slats of a wooden fence near the place where Amerson had been lying, Sgt. Mills discovered individually packaged quantities of crack cocaine. Sgt. Mills later questioned Amerson at the hospital. During that interview, Sgt. Mills asked Amerson about the cocaine that had been found in the slats of the wooden fence. At first, Amerson denied that the drugs were his. Eventually, however, he admitted that the crack cocaine was his and that police would find his fingerprints and blood on the bag. Amerson denied that he intended to distribute the cocaine.

The amended information charged Amerson with committing the class B felony of possessing cocaine, a controlled substance, with the intent to deliver. *See* § 195.211. His case was tried to a jury. Prior to voir dire, the trial court read instruction MAI–CR 3d 300.02 to the veni-

---

1. All references to rules are to Missouri Court Rules (2010). All references to statutes are to RSMo Cum.Supp. (2005).

re. In relevant part, this instruction stated:

The Court will now read to you an instruction on the law applicable to all criminal cases.

The charge of an offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense.

The defendant is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty.

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

Is there any of you who, if selected as a juror, could not, for any reason, follow that instruction? If so, would you please raise your hand.

The record reflects no venireperson responded to this question.

The venire was questioned first by the prosecutor. During his voir dire, he made the following statements:

There are probably people on the, on this, in this jury panel, who detest drug use. Just because you have a negative feeling about drugs, or drug user[s], or drug sellers does not necessarily make you an unfair juror. All you have to do to be fair is to follow the judge's instructions and decide this case based on the facts of this case. If everybody who detested drugs refused to be fair, then drug cases would be judged by persons who do not detest drugs, and that would not be fair. Knowing that, is there anybody who would not be fair to both sides regardless of their feelings about drugs if they serve on the jury? If so, please raise your hand. You might be thinking to yourself, well, that's hard to do. And, maybe, so, but to get good fair juries, we have to ask you to do that. For example, nobody likes child murderers, a rapist, but in order to get a fair juror on those types of cases, we have to have people that will be fair to both sides, so that's why I ask you. A trial is a search for the truth of a case. It is not a search for reasonable doubt. Does anyone disagree with that statement? Please raise your hand if you do. Does anyone believe that in order to find a person guilty beyond a reasonable doubt of anything that you, the jury would have to have seen the crime committed with your own eyes? Of course, you wouldn't be on the jury if that were the situation[.] But does anyone feel that way, you can't find anybody guilty beyond a reasonable doubt unless I saw it? Does anyone feel like that? My burden of proof in this case, as in all criminal cases, is proof beyond a reasonable doubt....

Amerson's counsel did not object to any of the prosecutor's statements, and the record reflects no response by a venireperson to any of the prosecutor's inquiries. During Amerson's voir dire of the venire, defense counsel stated:

Mr. Amerson has been charged with a very serious crime, and he has pled not guilty.... Is there anybody here that feels that because the Prosecutor has

said he is guilty, or because he is sitting here as a defendant, that he must be guilty? If so, please raise your hand.... Mr. Amerson is presumed innocent until proven guilty. I'm sure y'all have heard of it, or presumed innocent until proven guilty. That started today when he walked into the courtroom, you had to say, as a juror, you must sit here and say, he's presumed innocent until the Prosecutor proves beyond a reasonable doubt that he's guilty. Is there anybody here that cannot, or will have a problem with presuming Mr. Amerson's innocence until he is proven guilty? If so, please raise your hand. The State has the burden of proof in this case. Which means, the Prosecutor must prove that Mr. Amerson is guilty beyond a reasonable doubt. This means that you must be firmly convinced that what the Prosecutor says Mr. Amerson did, he did. This is the highest degree of standard, standard of, standard of proof that the Prosecutor will have to prove. Does anybody think this burden is too high? If so, please raise your hand.

The record reflects no response by a venireperson to any defense counsel's questions.

Just prior to closing argument, the trial court read the instructions to the jury. Instruction No. 4 informed the jurors that the State bore the burden of proof. This instruction, which was based upon pattern instruction MAI–CR 3d 302.04, stated:

The charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense.

The defendant is presumed to be innocent, unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty.

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

After all of the instructions were read, the State gave the opening portion of its closing argument. After thanking the jurors for their attention to the case, the prosecutor stated:

Our nation faces a lot of terrible problems, and one of them is the drug problem. Drugs kill hope, innocence, and ambition. It's been stated that we have a war on drugs. If we're really fighting a war on drugs, then we're losing. It seems like every time you hear about a crime, you hear the words drug related, or drugs were involved, and, often, it is crack cocaine, or cocaine. In this case we have a murder, an assault first, and we have drugs. Drugs are at epidemic level, especially among our young people. At one point in time, in the history of man kind, we could run away from those kind of problems. That's the type of problems that we're facing today in regard to serious crimes. Used to be that drugs were only in the cities. Not rural areas. Certainly not in Southeast, Missouri. I can remember when we didn't have any, I, I'm sure maybe some of you can as well, but, unfortunately we cannot say that anymore. It used to be

if you lived in the city, you could move to a rural area, but, today it's a different world. There's no place to go. If we want to live in a world that's fit to live in, we must be willing to fight in our own communities. That's what I'm asking to you do today, by your verdict, is to fight against those who bring crime, and, drugs in our communities.

Defense counsel did not object to this argument.

The prosecutor then summarized the evidence that had been presented and explained why it supported Amerson's conviction. Toward the end of the prosecutor's argument, he made the following statements:

The defense attorney is probably gonna talk to you some about reasonable doubt. You will all remember in voir dire, I asked you all, and you all agreed, that a trial is a search for the truth, not a search for reasonable doubt. Well there's no reasonable doubt in this case, folks. And you've got the definition in your Instruction No. Four. "Reasonable doubt is a doubt based on reason and common sense. It does not require proof that overcomes every possible doubt." It's common sense, folks, you recall on voir dire, you use it everyday, that's the reason why when you meet a car on the highway, you don't run into the ditch. That's the reason why when you go to the bank and you want to deposit a hundred in the checking account, you go there, and you give the teller the hundred. Well, why do you do that? Well that teller might steal your hundred dollars and not put it in your checking account, but you believe beyond a reasonable doubt they're gonna put it in your checking account, or you wouldn't give them the hundred dollars. Reasonable doubt is all about the common sense, folks.

Defense counsel did not object to this argument.

During Amerson's closing argument, defense counsel made the following responsive argument:

One of the first questions I asked you about this morning, earlier this morning when I first spoke to you, was not guilty until proven innocent. And, when y'all go back to that jury room, you're supposed to start out, Mr. Amerson is innocent. We have to find the evidence that's shown you beyond a reasonable doubt that he did commit this crime. Talking about reasonable doubt, Mr. Hazel talked about a checking account. You have common sense that the teller is going to deposit that $100 into the checking account, but I guarantee every one of you, I know I do, gets a receipt to make sure that this 100 is actually deposited. There's a difference between common sense and beyond a reasonable doubt. Getting that receipt is beyond a reasonable doubt. Each of the State's witnesses today stood up here and told you that they had no personal knowledge of how the drugs got in that fence. Mr. Hazel gave you some, during his closing argument, gave you some pointers on how you could jump to that conclusion. I want to remind you, like the judge said earlier, that our closing arguments are not evidence. The only thing that I want you to consider when you go in that jury room is what you heard from the witness stand.

Defense counsel then reminded the jurors of testimony from several specific witnesses who said they had no personal knowledge of how the drugs in the fence got there. Counsel also reminded jurors of the evidence that a crowd of 15–20 people had gathered at the scene after the shooting occurred. Finally, counsel noted that Clay had returned to the scene after

the shooting and had both the opportunity and a motive to tamper with the crime scene. Counsel argued that, "based upon physical evidence that testimony, from the people that you heard from the stand, there is reasonable doubt, there's a number of possibilities of the way those drugs got to that location."

During deliberations, the foreman sent out two notes relating to the DNA evidence. The jury convicted Amerson of the charged offense, and he was given a 10-year sentence. On direct appeal, this Court affirmed Amerson's conviction. *See State v. Amerson,* 259 S.W.3d 91 (Mo.App. 2008).

Amerson filed a timely motion for post-conviction relief pursuant to Rule 29.15. After appointment of counsel, an amended motion was filed. This motion alleged that Amerson's trial counsel was ineffective in two respects: (1) counsel failed to object and request a curative instruction when the prosecutor stated, during voir dire and again during closing arguments, that a trial is a search for the truth and not a search for reasonable doubt; and (2) counsel failed to object to the State's closing argument when the prosecutor mentioned that the war on drugs had spread from cities to rural communities. The motion court determined that the case file and records conclusively showed Amerson was not entitled to relief, so his post-conviction motion was denied without an evidentiary hearing. This appeal followed.

## II. Standard of Review

Amerson's two points on appeal assert that trial counsel was ineffective. He bore the burden of proving, by a preponderance of the evidence, that: (1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *See*

Rule 29.15(i); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998). To satisfy the first prong, Amerson must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. To satisfy the second prong, Amerson must establish that, but for counsel's unprofessional errors, there is a reasonable probability the result of the proceeding would have been different. *Strong v. State,* 263 S.W.3d 636, 655 (Mo. banc 2008). In order to prevail on an ineffective assistance claim, each prong of the performance and prejudice test must be proven. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). If one prong is not met, a court need not consider the other. *Childress v. State,* 248 S.W.3d 653, 654 (Mo.App.2008).

■ The motion court denied relief without conducting an evidentiary hearing. To be entitled to an evidentiary hearing, Amerson must: (1) allege facts, not conclusions, that would warrant relief if true; (2) these facts must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to Amerson. *Barnett v. State,* 103 S.W.3d 765, 769 (Mo. banc 2003). If the files and records of the case conclusively show that Amerson is not entitled to any relief, no evidentiary hearing is required. Rule 29.15(h); *Barnett,* 103 S.W.3d at 769.

Our review is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Smith v. State,* 207 S.W.3d 228, 230 (Mo.App.2006). We presume the motion court's findings and conclusions are correct. *Edwards v. State,* 200 S.W.3d 500, 509 (Mo. banc 2006). Findings and conclusions are clearly erroneous only if, after a full review of the

record, we are left with the definite and firm impression that a mistake has been made. *Id.*; *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996).

## III. Discussion and Decision

### Point I

■ In Amerson's first point, he contends the motion court clearly erred in denying relief without conducting an evidentiary hearing because defense counsel failed to object and ask for a curative instruction when the prosecutor stated in voir dire and closing argument that a trial is a search for the truth and not a search for reasonable doubt. The motion court decided that, if the prosecutor had not made these comments, there was no reasonable probability the verdict would have been different. Amerson argues that he was entitled to an evidentiary hearing on this ground of his motion because there was no reasonable trial strategy for defense counsel's failure to object, and the prosecutor's comments diminished and confused the jury about the State's burden of proof.

We agree that the prosecutor's comments in voir dire and closing argument border on the limits of what is proper and should not be repeated in other cases. *See State v. Tate*, 850 S.W.2d 385, 387–88 (Mo. App.1993). We do not agree, however, with Amerson's argument that these comments diminished the State's burden of proof or confused the jury in the case at bar.[2] The motion court decided there was no reasonable probability the verdict would have been different if these com-

ments had not been made. The court's conclusion is not clearly erroneous.

Before voir dire commenced, the trial court read MAI–CR 3d 300.02 to the venire. This instruction contained an explanation of the presumption of innocence, the State's burden of proving Amerson guilty beyond a reasonable doubt and how jurors should decide what constitutes a reasonable doubt. All of the venirepersons agreed to follow this instruction, and there is no contention on appeal that any aspect of this instruction was incorrect.

After the now-challenged comment in voir dire was made by the prosecutor, he reminded jurors that he had to prove Amerson guilty beyond a reasonable doubt. During voir dire by defense counsel, he reminded the venirepersons that Amerson was presumed innocent. Defense counsel then stated:

> The State has the burden of proof in this case. Which means, the Prosecutor must prove that Mr. Amerson is guilty beyond a reasonable doubt. This means that you must be firmly convinced that what the Prosecutor says Mr. Amerson did, he did. This is the highest degree of standard, standard of, standard of proof that the Prosecutor will have to prove. Does anybody think this burden is too high?

Defense counsel's statement of the law was correct, and none of the venirepersons responded that they believed the State's burden of proof was too high.

---

**2.** The three Missouri cases cited by Amerson are factually distinguishable. Each involved an attempt by a prosecutor to define reasonable doubt in a manner inconsistent with the approved MAI definition. *See State v. Shelby*, 634 S.W.2d 481, 483–84 (Mo.1982) (the prosecutor argued that, if the jury believed the defendant did it and that thought was reason-

able, then the state met its burden of proving defendant guilty beyond a reasonable doubt); *State v. Jones*, 615 S.W.2d 416, 420 (Mo.1981) (same argument and holding); *State v. Mahly*, 68 Mo. 315, 319–20 (1878) (the prosecutor argued that the preponderance of the testimony favored conviction and, upon such evidence, the jury must convict).

Prior to closing argument, the trial court read Instruction No. 4 to the jury. This pattern instruction, based upon MAI–CR 3d 302.04, told the jurors that: (1) the charges against Amerson created no inference of guilt; (2) he was presumed innocent; (3) the State had the burden of proving Amerson's guilt beyond a reasonable doubt; (4) a reasonable doubt is "a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case"; and (5) proof beyond a reasonable doubt required the jurors to be "firmly convinced" of Amerson's guilt, but the law did not require proof that overcame every possible doubt. There is no contention on appeal that Instruction No. 4 misstated the law in any respect, and this instruction was available to the jurors during deliberations.

Toward the end of the opening portion of the State's closing argument, the prosecutor made the now-challenged comment "that a trial is a search for the truth, not a search for reasonable doubt." Immediately after making that remark, however, the prosecutor told jurors that Instruction No. 4 explained what constituted a reasonable doubt. During Amerson's closing argument, defense counsel responded to the prosecutor's argument by reminding the jurors that Amerson was presumed innocent and had to be proven guilty beyond a reasonable doubt. Counsel told jurors that they could only consider the evidence they heard from the witness stand in deciding whether that burden had been met. Counsel reviewed the evidence and pointed out several facts which created reasonable doubt in his view. During deliberations, the jurors sent out two notes. Neither one suggested that jurors were confused in any way about the concept of reasonable doubt. Instead, the record suggests the jurors were focused on the evidence presented at trial because each note asked a question about the DNA evidence introduced by the State.

After reviewing the entire record, we agree with the motion court that there is no reasonable probability the verdict would have been different if the prosecutor's comments in voir dire and closing argument had not been made. In light of the multiple times the jurors were correctly instructed by the trial court about the presumption of innocence, the State's burden of proving Amerson guilty beyond a reasonable doubt and how jurors should determine whether reasonable doubt existed, Amerson was not prejudiced by defense counsel's failure to object to the prosecutor's voir dire and closing argument comments. Because the record conclusively shows that Amerson was not entitled to relief based upon this ground of his motion, Point I is denied.

### Point II

▬▬ Amerson's second point relates to a statement made by the prosecutor at the outset of his closing argument. No objection was made to this argument, which was set out in full earlier in this opinion. The gist of the argument was that: (1) the war on drugs was being lost; (2) drug use and crimes arising therefrom had moved from urban to rural areas; and (3) by rendering a guilty verdict, the jurors would be fighting drugs and drug-related crime in their rural community. Amerson contends the motion court clearly erred in denying relief without conducting an evidentiary hearing because the prosecutor's closing argument impermissibly pandered to fears and prejudices about urban crime invading rural Missouri. Amerson argues that the record reflects no reasonable trial strategy for counsel's failure to object to that argument.

To prove that trial counsel was ineffective, Amerson had to show that an objec-

tion to the prosecutor's argument would have been meritorious and that defense counsel's failure to object substantially deprived Amerson of a fair trial. *Mitchem v. State,* 250 S.W.3d 749, 755–56 (Mo.App. 2008). Amerson cannot meet the first prong necessary for relief: a meritorious objection.

 "It has long been recognized that the prosecutor is permitted to argue such propositions as the prevalence of crime in the community, the personal safety of its inhabitants, and the jury's duty to uphold the law as well as inferences from its failure to convict, and such pleas may call upon common experience." *State v. Newlon,* 627 S.W.2d 606, 619 (Mo. banc 1982), *overruled on other grounds by State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997). A prosecutor also may comment on the necessity of law enforcement and the evils that will befall society if a jury fails in its duty. *State v. Beal,* 840 S.W.2d 881, 881–82 (Mo.App.1992). In the case at bar, the prosecutor did no more than appeal to the jurors to uphold the law and protect their community from the danger of drugs and drug-related crime. Such an argument is permissible. *See, e.g., State v. Roper,* 268 S.W.3d 392, 399–400 (Mo.App. 2008); *State v. Burton,* 219 S.W.3d 778, 781–82 (Mo.App.2007); *State v. Smith,* 849 S.W.2d 677, 680–81 (Mo.App.1993); *State v. Hatcher,* 835 S.W.2d 340, 344 (Mo.App. 1992). Amerson's counsel "cannot be faulted for not making non-meritorius objections." *Hatcher,* 835 S.W.2d at 346. Accordingly, the motion court did not clearly err by denying relief as to this ground of Amerson's post-conviction motion without conducting an evidentiary hearing. *State v. Gola,* 870 S.W.2d 861, 865–66 (Mo.App.1993); *State v. Lumpkin,* 850 S.W.2d 388, 395–96 (Mo.App.1993). Because the record conclusively shows that Amerson was not entitled to relief based upon this ground of his motion, Point II is denied.

The order denying Amerson's amended Rule 29.15 motion is affirmed.

BARNEY and BURRELL, JJ., Concur.