2014 COA 53

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Donald Roy LUCERO, Defendant–Appellant.**

**Court of Appeals No. 12CA0801**

Colorado Court of Appeals, Div. II.

Announced April 24, 2014

Rehearing Denied May 29, 2014

Jefferson County District Court No. 08CR3480 Honorable Tamara S. Russell, Judge

John W. Suthers, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Robert S. Berger, P.C., Robert S. Berger, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE RICHMAN

¶1 Defendant, Donald Roy Lucero, appeals the judgment of conviction entered on jury verdicts finding him guilty of violating the Colorado Organized Crime Control Act, conspiracy, burglary, and three counts of theft.

¶2 This case involves a single issue: whether the trial court erred in finding that defendant did not establish a prima facie case of discrimination under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), after the People waived the use of a peremptory strike, thereby excluding from the jury a potential juror with a Hispanic surname. We conclude that the court did not err and therefore affirm the conviction.

## I. Background

¶3 On the first day of trial, twenty-two potential jurors were seated in the jury box for voir dire. The court stated that there would be no alternate jurors, and the People and defendant would each have five peremp-

tory challenges. The court asked preliminary questions, and then the People and defense counsel spoke with the prospective jurors for thirty minutes. Both defendant and the People passed the twenty-two person venire for cause.

¶4 Although the jurors were assigned to seats one through twenty-two, peremptory challenges were to be used against jurors in seats one through twelve only, with replacements taken in order from seats thirteen to twenty-two, a process known as the "struck jury" system. The court explained:

> At the end of that time, I'm going to ask each side to dismiss or give them the opportunity to dismiss five people. So five plus five is 10, 22 minus 10, the 12 people that are left over are going to be our jurors.

Juror P., the only potential juror with a Hispanic surname, was seated in the twenty-second chair.

¶5 Nothing in the record indicates that the People used their challenges against anyone with a Hispanic surname. The People and defendant each struck two potential jurors. The People waived their third peremptory challenge and accepted the panel. Defendant exercised his third challenge, giving the People another opportunity to exercise a peremptory challenge; they again accepted the panel. Defendant exercised his fourth challenge, and the People exercised their third peremptory to strike the replacement juror. Defendant exercised his fifth challenge, and the People exercised their fourth challenge to strike that replacement juror. The People then accepted the panel again. Because the People did not exercise their fifth challenge, Juror P. was not on the final jury panel and was excused.

¶6 The court inquired whether the parties had any objection pursuant to *Batson.* Defense counsel indicated that he had a problem with how the peremptory challenges had been used. The court clarified that defense counsel was referring to Juror P.

¶7 The following discussion ensued:

*The Court:* You have a Batson [ ] challenge to the way the peremptories were used?

*Defense:* Well, Judge, [defendant] just feels there is [sic] no Hispanics present in the jury, and that there was one Hispanic that was let go. He just wanted me to bring that up, that he should have been empanelled also.

. . .

*Prosecutor:* Your Honor, I didn't exercise any challenges to Mr. P. I take that as being an objection to the veneer [sic] as it exists. I don't think there is a requirement that if you are a Hispanic and you are the defendant, that you are entitled to a certain amount of Hispanic jurors, only that you're entitled to a fair cross-examination [sic] of the community of his peers. I believe he has received a fair cross-section of the community of his peers.

*The Court:* I do believe that Batson or Wheeler has to do with the systematic exclusion of someone for an impermissible reason, race, religion, something along those lines.

What we're talking about here, if I understand, is that [defendant] is Hispanic. That he feels Mr. P should not have been left out of the jury because he's Hispanic.

However, Mr. P is juror Number 22. He did not—strike that. There were no jurors with Hispanic surnames who were struck by the district attorney. I believe the folks who were struck were N, W, and then they passed, passed and then L.

Do you disagree with that [defense counsel]?

*Defense:* No, Judge.

*The Court:* He said, no, he does not disagree with that. Therefore, I don't see any systematic exclusion for an improper purpose. So I will deny the objection, and we'll accept the panel as it is.

¶8 The court ruled that the defense had not established a prima facie case of discrimination because the People had not exercised a strike to exclude Juror P. On appeal, defendant contends that the trial court erred by ruling that he failed to establish a prima facie showing of racial discrimination during the jury selection process. We disagree.

## II. Applicable Law and Standard of Review

¶ 9 The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the use of racial discrimination in the exercise of peremptory challenges. *Miller–El v. Dretke,* 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); *Batson,* 476 U.S. 79, 106 S.Ct. 1712; *Valdez v. People,* 966 P.2d 587, 589 (Colo.1998); *People v. Vieyra,* 169 P.3d 205, 210 (Colo.App. 2007).

¶ 10 *"Batson* outlines a three-step process for evaluating claims of racial discrimination in jury selection under the Equal Protection Clause." *People v. Cerrone,* 854 P.2d 178, 185 (Colo.1993). "In that process, the defendant is required first to make a prima facie showing that the State has excluded potential jurors on account of race." *Id.* Only if the objecting party establishes a prima facie case does the burden shift to the proponent of the strike to come forward in the second step with a race-neutral explanation for the challenge. If a race-neutral reason is articulated, the trial court, in the third and final step, must determine whether the opponent of the strike has nonetheless proved purposeful racial discrimination. *Valdez,* 966 P.2d at 589–90.

¶ 11 We review de novo a trial court's ruling of whether a defendant has established a prima facie showing that the other party excluded a potential juror because of race. *Vieyra,* 169 P.3d at 210.

## III. Analysis

¶ 12 The United States Supreme Court has not addressed defendant's contention that a waiver of a peremptory strike by the People can give rise to a prima facie showing that a juror was excluded because of race, gender, or ethnic background. Nor have the appellate courts of our state ruled on whether the People's failure to use a peremptory challenge can give rise to a prima facie claim of discrimination under *Batson.* Defendant cites no authority to support his contention.

¶ 13 Nonetheless, several federal and state courts have addressed this specific issue. Some have concluded that the waiver of a peremptory strike does not give rise to a prima facie case of discrimination for purposes of a *Batson* challenge. *See United States v. Tiggett,* 219 Fed.Appx. 163 (3d Cir. 2007) (unpublished); *State v. Amerson,* 259 S.W.3d 91 (Mo.Ct.App.2008); *Mayes v. Texas,* 870 S.W.2d 695, 699 (Tex.Ct.App.1994).

¶ 14 The rule that emerges from other cases, however, is that although waiver of a peremptory challenge, without more, is insufficient to establish a prima facie case of discrimination under *Batson,* waiver, accompanied by something more, can support a prima facie case. *See United States v. Esparza–Gonzalez,* 422 F.3d 897 (9th Cir.2005); *State v. Paleo,* 200 Ariz. 42, 22 P.3d 35, 37 (2001).

¶ 15 For the reasons discussed below, we find the reasoning of the latter cases persuasive and therefore apply the rule that emanates from them to this case.

## A. Waiver of Peremptory Challenge Does Not Support a Prima Facie *Batson* Challenge

¶ 16 Cases which conclude that the People's waiver of a peremptory challenge cannot give rise to a prima facie case of discrimination are founded on the rationale that inaction by the People cannot amount to discrimination.

¶ 17 In *Mayes,* 870 S.W.2d at 699, the prosecutor deliberately refrained from using seven remaining peremptory strikes against white venirepersons. As a result, three remaining African–American venirepersons were precluded from being included on the twelve-member panel. The defendant argued that "because of the State's *inaction,* qualified African–American venirepersons were strategically prevented from serving on the ultimate jury panel." *Id.* (emphasis in original). Deeming that contention "ludicrous," the court concluded that it was "not prepared to hold that [a defendant] may sustain a *Batson* challenge by proof of the State's *non-use* of peremptory challenges." *Id.* (emphasis in original); *see also Rodriguez v. State,* No. 07–02–0004–CR, 2002 WL 31165112, at *3 (Tex.Ct.App. Sept. 30, 2002) (holding that "the State has no duty to use all

of its strikes merely because there are minority members on the panel further down the list").

¶ 18 The Missouri Court of Appeals expanded on the rationale expressed in *Mayes* in *Amerson*, 259 S.W.3d at 94. There, the defendant contended on appeal that "the State's waiver of its last peremptory challenge, which resulted in the exclusion of [an African–American] and other qualified venirepersons from the jury due solely to their random numerical placement on the venire" violated *Batson*, and deprived the defendant and the excluded venireperson of equal protection. *Id.* Because the asserted error had not been preserved, the court reviewed for plain error.

¶ 19 The opinion notes that *Batson* and its progeny apply when a potential juror is *removed* for an impermissible reason. Thus, the equal protection analysis in those cases does not apply if the People waive their right to exercise a peremptory strike. The opinion emphasizes that two prior Missouri appellate court decisions addressing the issue concluded that *Batson* does not require the People to provide a race-neutral reason for the removal of a juror that they do not, in fact, exclude by the use of a peremptory strike, where the court, not the People, removes the juror. *Id.* at 94 (citing *State v. Elder*, 901 S.W.2d 87 (Mo.Ct.App.1995); *State v. Strong*, 142 S.W.3d 702 (Mo.2004)).

¶ 20 Moving beyond the rationale provided in the prior Missouri cases, the *Amerson* opinion rejects the defendant's argument for the following reasons: (1) " 'the right to exercise peremptory challenges in a criminal case is a right which may be waived by the accused or by the State after a fair opportunity has been given to exercise it,' " *id.* at 95 (quoting *State v. Thomas*, 530 S.W.2d 265, 267 (Mo.Ct.App.1975)); (2) the use of peremptory challenges in a criminal case " 'is purely a right to reject, and not a right of selection,' " *id.* (quoting *State v. Supinski*, 378 S.W.2d 602, 605 (Mo.Ct.App.1964)); and (3) "[t]he seating of the actual jurors in Defendant's case depended solely upon their random, numerical placement on the jury list." *Id.*

¶ 21 Further, *Amerson* states that compelling the People to strike a venireperson with a lower juror number in order to make room on the jury for someone of another race would contravene the principle that "a defendant is not entitled to a jury of any particular racial composition." *Id.* Finally, the decision notes that forcing the state to exercise a peremptory challenge against another person would be tantamount to requiring the removal of a qualified venireperson in order to replace that person with another solely because of the latter's race, a practice that could itself raise equal protection issues.

¶ 22 In *Tiggett*, the Third Circuit rejected the defendant's argument that the waiver of a peremptory challenge could constitute a prima facie case of discrimination:

The mere facts that the Government struck *one* African American and refused to strike any further jurors, which had the effect of keeping one African American from moving into the jury pool, simply do not establish the sort of pattern of behavior from which to draw an inference of discrimination, particularly when the Government used `most of its peremptory strikes against non-African Americans.

219 Fed.Appx. at 168.

## B. Waiver of Peremptory Challenge, Plus More, Can Make a Prima Facie Case

¶ 23 The Arizona Supreme Court and the Ninth Circuit Court of Appeals have expressed a more nuanced view of the issue.

¶ 24 In *State v. Paleo*, 22 P.3d at 37, the Arizona Supreme Court held that waiver of a peremptory strike alone "is insufficient to create an inference of discriminatory purpose." The court reasoned that "[t]he law does not presume wrongdoing without action of some kind or omission of a legally required act." *Id.* Moreover, "neither party has a duty to remove jurors to ensure that members of a specific racial or gender group are seated." *Id.*

¶ 25 While recognizing that waiver, without more, is insufficient to establish a prima facie showing, the *Paleo* court also expressly stated that "[w]aiver, accompanied by something more, could support a prima facie case." *Id.* The court gave the following examples of

"something more": (1) a party's making of discriminatory remarks or (2) a party's pattern of strikes removing a specific group accompanied by waiver that results in the removal of other members of that group. *Id.* at 37.

¶ 26 The court concluded:

Simply stating that a party did not use all of the allotted peremptory strikes does not establish a prima facie case of discrimination, even if minority jurors will not make the final list. Something beyond just waiver is required. Evidence of a discriminatory purpose driving the waiver must be presented to establish a prima facie case.

*Id.* at 38.

¶ 27 Similarly, the Ninth Circuit has held that when a waiver of a peremptory strike which keeps a minority off of the final jury panel is accompanied by something more, a prima facie case for a *Batson* challenge is established. *Esparza–Gonzalez,* 422 F.3d at 899.

¶ 28 In *Esparza–Gonzalez,* the court held that "for purposes of determining whether a *prima facie* case of a *Batson* violation has been established, waivers of peremptory strikes in a struck jury system should be treated the same as exercises of peremptory strikes in an alternate system." *Id.* at 899. Thus, the opinion rejects the notion that there is a substantive difference between the affirmative act of striking a juror and the passive act of not exercising a peremptory. Rather than focusing on the action or inaction, the opinion considers the result.

¶ 29 There, thirty-two venirepersons were initially selected, of whom twenty-eight were prospective jurors and four were alternates. The defense had ten peremptory strikes and the People had six, and each side received an additional challenge for the alternate jurors. *Id.* The defense exercised all ten of its strikes. The People used only one, waiving the remainder. Under the struck system, the People's waiver of its second peremptory strike had the effect of removing the only potential juror with a Latino surname. *Id.*

¶ 30 The defense challenged her removal under *Batson.* Relying on *Paleo,* 22 P.3d 35, the district court ruled that the failure to use

a peremptory strike, without other evidence of discriminatory intent, did not establish a prima facie case of intentional discrimination. *Esparza–Gonzalez,* 422 F.3d at 900. Later in the proceedings, the People waived their peremptory strike of the alternate pool, which had the effect of removing the only alternate with a Latino surname. *Id.* The defense again challenged the waiver under *Batson.* The court again found that the defense had failed to make a prima facie showing. *Id.*

¶ 31 On appeal, the Ninth Circuit court determined:

Because under this particular method of jury selection waivers of peremptory strikes result in the removal of known jurors, we conclude that such waivers are best viewed as effective strikes against identifiable jurors, and therefore for the purposes of establishing a prima facie case such waivers should be treated the same as the exercise of peremptory strikes.

*Id.* at 902. The court held that to establish a prima facie case, the defendant "must show that (1) he is a member of a cognizable group; (2) the prosecutor has removed members of such a group; and (3) the totality of the circumstances gives rise to an inference that the prosecutor excluded jurors based on race." *Id.* at 904 (emphasis added).

¶ 32 The court held that waivers of peremptory strikes could be equivalent to actual strikes, but it also required that the People remove *members*—plural—of such a group. Thus, a waiver of peremptory challenges, which had the effect of removing one potential juror and one alternate, both with Latino surnames, was sufficient to make a prima facie showing under *Batson.*

■ ¶ 33 We conclude that the distinction between the "action" of exercising a peremptory challenge, and the "inaction" of waiving a peremptory challenge is an artificial construct that does not support a constitutional distinction. Contrary to the statement in *Amerson,* what *Batson* and its progeny preclude is the use of peremptory challenges to "exclude" potential jurors based solely on the jurors' race, gender, or ethnicity. *People v. O'Shaughnessy,* 275 P.3d 687, 690 (Colo.App.

2010), *aff'd*, 2012 CO 9, 269 P.3d 1233. Whether the exclusion is caused by action or inaction is immaterial.

 ¶ 34 Even so, we further conclude that waiver alone cannot make out a prima facie case, for there can be numerous reasons why the People might waive peremptory challenges, including the possibility that they are satisfied with the then-seated panel. Thus, absent some other showing, we will not infer that a nefarious intent lies behind a waiver of a peremptory challenge resulting in the dismissal of a minority venireperson.

¶ 35 At the same time, we acknowledge the valid concern expressed in *Amerson*. Forcing the prosecution to use a peremptory challenge to excuse one juror in order to make a minority juror eligible to sit on the jury may raise equal protection issues. *See, e.g., United States v. Nelson*, 277 F.3d 164, 207–08 (2d Cir.2002) (disapproving purposeful replacement of a juror based on racial and ethnic considerations, stating, "[t]he significance of a jury in our polity as a body chosen apart from racial and religious manipulations is too great to permit categorization by race or religion even from the best of intentions").

¶ 36 Yet, we note that a rule which requires the prosecution to exercise a peremptory challenge because there is "something more" in the record that, taken with the failure to exercise the challenge would support a prima facie case under *Batson*, is a form of remedial measure the Equal Protection Clause may permit. *See, e.g., Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 300–302, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

¶ 37 Therefore, we conclude that the rule to apply in this case is that a waiver of a peremptory challenge, without more, does not support a prima facie case of discrimination under *Batson*.

### C. Application

¶ 38 Here, although the effect of the People's waiver of the last peremptory challenge was to exclude a minority juror, we conclude that defendant has failed to demonstrate any other discriminatory action by the prosecutor in his case. Although the prosecutor exercised peremptory challenges against other jurors, unlike the situation in *Esparza–Gonzalez*, none of the other jurors was a minority. Moreover, defendant points to no discriminatory remarks by the People or any other act that would give rise to an inference of bias or discrimination. Thus, no pattern of discrimination has been shown.

### IV. Conclusion

¶ 39 Under these circumstances, the trial court did not err in finding that defendant had failed to make out a prima facie case of discrimination. We affirm defendant's judgment of conviction.

JUDGE CASEBOLT and JUDGE ASHBY concur.